**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

UNITED STATES OF AMERICA and THE
STATES OF CALIFORNIA and ILLINOIS,
EX REL. SCARLETT LUTZ and KAYLA
WEBSTER,

               *Plaintiffs/Relators*,

     v.

LABORATORY CORPORATION OF
AMERICA HOLDINGS,

               *Defendant*.

CA No.:  9:14-cv-3699-RMG

**REPLY IN SUPPORT OF**
**LABORATORY CORPORATION OF AMERICA HOLDINGS'**
**MOTION TO DISMISS FOURTH AMENDED QUI TAM COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

REPLY ARGUMENT ............................................................................................................. 2

I.  Relators Do Not Allege That LabCorp Encouraged Medically Unnecessary Tests .......... 2

II.  Relators' Claim for Reverse False Claims Liability Should Be Dismissed ...................... 4

    A.  Relators Cannot Overcome This Claim's Redundancy ........................................ 4

    B.  This Claim Is Not Alleged with the Particularity Required By Rule 9(b) ............. 6

III.  Relators Lack Standing for Their State-Law Claims, Which Also Fail Rule 9(b) ........... 7

    A.  Granting Standing Would Ignore the Statutory Text ........................................... 7

    B.  Relators' Vague Suggestion of a "Nationwide Scheme" Fails Rule 9(b) ............. 9

IV.  Relators' Conspiracy Claims Should Be Dismissed ..................................................... 12

    A.  Relators Do Not Allege an "Unlawful Agreement" Between LabCorp,
        HDL, and Singulex .......................................................................................... 13

    B.  Relators Do Not Adequately Allege that LabCorp Shared a Specific Intent
        to Defraud the Government with HDL and Singulex ......................................... 15

CONCLUSION .................................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................15

*Maa v. Ostroff*,
No. 12-CV-00200-JCS, 2013 WL 1703377 (N.D. Cal. Apr. 19, 2013) ..................12

*Mulry v. Berrios*,
72 N.E.3d 1260 (Ill. App. 2017) ..............................................................................8

*Pencheng Si v. Laogai Research Found.*,
71 F. Supp. 3d 73 (D.D.C. 2014)..............................................................................6

*People ex rel. Alzayat v. Hebb*,
18 Cal. App. 5th 801 (Cal. Ct. App. 2017) ...............................................................9

*People ex rel. Strathmann v. Acacia Research Corp.*,
210 Cal. App. 4th 487 (Cal. Ct. App. 2012) ..........................................................8, 9

*Reno v. Baird*,
957 P.2d 1333 (Cal. 1998) ........................................................................................8

*SD3, LLC v . Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) ..................................................................................12

*Taul v. Nagel Enters., Inc.*,
No. 2:14-cv-0061-VEH, 2017 WL 432460 (N.D. Ala. Feb. 1, 2017) ......................6

*U.S. ex rel. Ahumada v. NISH*,
756 F.3d 268 (4th Cir. 2014) ..................................................................................12

*U.S. ex rel. Bates v. Dentsply Intern., Inc.*,
No. 12-7199, 2014 WL 4384503 (E.D. Pa. Sept. 4, 2014).....................................11

*U.S. ex rel. Branscome v. Blue Ridge Home Health Servs., Inc.*,
No. 7:16CV00087, 2018 WL 1309734 (W.D. Va. Mar. 13, 2018) ...................4, 5, 6

*U.S. ex rel. Capella v. Norden Systems, Inc.*,
No. 3:94–cv–2063 (EBB), 2000 WL 1336487 (D. Conn. Aug. 24, 2000) ........................12, 13

*U.S. ex rel. DeCesare v. Americare In Home Nursing*,
757 F. Supp. 2d 573 (E.D. Va. 2010) ....................................................................12

*U.S. ex rel. DeCesare v. Americare In Home Nursing*,
No. 1:05cv696, 2011 WL 607390 (E.D. Va. Feb. 10, 2011)..................................................14

*U.S. ex rel. Dekort v. Integrated Coast Guard, Sys.*,
705 F. Supp. 2d 519 (N.D. Tex. 2010) ....................................................................13

*U.S. ex rel. Downy v. Corning, Inc.*,
118 F. Supp. 2d 1160 (D.N.M. 2000) ....................................................................3, 4

*U.S. ex rel. Drennen v. Fresenius Med. Care Holdings, Inc.*,
No. 09-10179-GAO, 2012 WL 8667597 (D. Mass. Mar. 6, 2012) ...........................................10

*U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*,
719 F.3d 31 (1st Cir. 2013)................................................................................10

*U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*,
579 F.3d 13 (1st Cir. 2009)................................................................................10

*U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*,
No. 1:11-CV-962-WSD, 2013 WL 2303768 (N.D. Ga. May 17, 2013) .................................11

*U.S. ex rel. Groat v. Boston Heart Diagnostics Corp.*,
296 F. Supp. 3d 155 (D.D.C. 2017)....................................................................3, 4

*U.S. ex rel. Johnson v. Shell Oil Co.*,
183 F.R.D. 204 (E.D. Tex. 1998)..........................................................................13

*U.S. ex rel. Ligai v. ETS-Lindgren Inc.*,
No. H-112973, 2014 WL 4649885 (S.D. Tex. Sept. 16, 2014) .................................4

*U.S. ex rel. Lisitza v. Par Pharm. Cos., Inc.*,
276 F. Supp. 3d 779 (N.D. Ill. 2017) ....................................................................14

*U.S. ex rel. Matheny v. Medco Health Sols., Inc.*,
671 F.3d 1217 (11th Cir. 2012) ......................................................................4, 5, 6, 7

*U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
707 F.3d 451 (4th Cir. 2013) ............................................................................10

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*,
   238 F. Supp. 2d 258 (D.D.C. 2002) ..................................................................10

*U.S. ex rel. Spay v. CVS Caremark Corp.*,
   913 F. Supp. 2d 125 (E.D. Pa. 2012) ...............................................................10

*U.S. ex rel. Westfall v. Axiom Worldwide, Inc.*,
   No. 8:06–cv–571–T–33TBM, 2009 WL 1424213 (M.D. Fla. May 20, 2009) .......................12

*United States v. Berkeley Heartlab, Inc.*,
   247 F. Supp. 3d 724 (D.S.C. 2017) ....................................................................5

*United States v. Berkeley Heartlab, Inc.*,
   225 F. Supp. 3d 487 (D.S.C. 2016) ................................................3, 4, 10, 11, 14

*United States v. Bertram*,
   900 F.3d 743 (6th Cir. 2018) ...........................................................................2

*United States v. Toyobo Co.*,
   811 F. Supp. 2d 37 (D.D.C. 2011) ...................................................................13

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................... *passim*

**STATUTES**

31 U.S.C. § 3730(b)(1) ...........................................................................8

42 U.S.C. § 1320a-7k ............................................................................7

Cal. Gov't Code § 12652(c)(1) ...................................................................8

Cal. Ins. Code § 1871.7(e)(1) ....................................................................8

Cal. Ins. Code § 1871.7(f)(3) ....................................................................9

Ill. Comp. Stat. Ann. § 92/15(a) ..................................................................8

Ill. Comp. Stat. Ann. § 175/4(b)(1) ...............................................................8

# INTRODUCTION

As Relators see it, LabCorp intentionally conspired with HDL and Singulex to present kickback-tainted claims to the federal government and private insurers.[1]  Faced with the inconvenient truth that LabCorp actually reported both companies to the government, Relators chalk this up as an elaborate ruse that would somehow enable LabCorp to escape detection.  In addition, Relators now argue that LabCorp was pushing doctors to order medically unnecessary tests, while simultaneously using kickbacks to ensure doctors did not work with other labs.  LabCorp is eager to debunk these brazen accusations.  For now, with the claims that LabCorp moved to dismiss, Relators' opposition shows that their theories do not survive scrutiny.

*First*, laboratories generally cannot be liable when doctors order medically unnecessary tests.  Relators do not dispute this.  Instead, Relators pivot to a theory that LabCorp *encouraged* unnecessary tests.  But Relators do not allege that LabCorp ever tried to affect which tests a doctor ordered.  Relators' theory thus is not the encouragement theory that a handful of courts have recognized, where the defendant directly promoted unnecessary services.  No court has ever endorsed the far-reaching theory that Relators advance here.

*Second*, Relators offer little defense of their reverse false claims theory's redundancy.  They fail to address the many cases on how such redundancy calls for dismissal.  Moreover, their proposed Rule 9(b) standard is not only incorrect but also not even a standard they meet.

*Third*, Relators' claim of standing under CIFPA and ICFPA pays no attention to the statutory text.  Both statutes grant standing to only "interested persons," not all "persons."  Yet Relators and the California Department of Insurance ("California DOI") never grapple with this language and also never explain how Relators have any special interest in their state-law claims.

---

[1] Unless otherwise defined, capitalized terms (*e.g.*, LabCorp, HDL, IOP, OIG) have the same meanings as in LabCorp's opening brief.

Instead, both ask for a broad rule of standing that the plain text and case law reject. And, in any event, Relators' state-law claims also fail Rule 9(b). Relators concede that they have no particularized allegations that LabCorp engaged in fraud in California and Illinois, and their conclusory claims of a "nationwide scheme" do not pass muster.

*Finally*, Relators' conspiracy claim is little more than empty hand-waving, in that they do not identify any allegations of an improper agreement between LabCorp, HDL, and Singulex— instead pointing to negotiations or agreements outside the purported conspiracy's scope. And their claim of LabCorp's improper intent is even thinner. The conspiracy claims, like the others covered by LabCorp's motion, should be dismissed.

## REPLY ARGUMENT

### I.     Relators Do Not Allege That LabCorp Encouraged Medically Unnecessary Tests.

As this Court put it during the BlueWave trial, "[y]ou cannot hold a lab liable" on a theory under which "the lab[] had to second-guess the doctors." Trial Tr. 2706:19-21 (Jan. 30, 2018). As Relators concede, LabCorp did not control doctors' orders and only ever ran tests after they were ordered. *See* Opp'n at 9. Relators also do not disagree that LabCorp generally "may rely on [a] doctor's order in submitting a claim for reimbursement as medically necessary." *United States v. Bertram*, 900 F.3d 743, 750 (6th Cir. 2018). This is fatal to Relators' theory that LabCorp should be liable for claims for medically unnecessary services. *See* Opening Br. at 9-13.

Relators respond that "LabCorp improperly encouraged medically unnecessary testing," such that the general reliance allowed for laboratories following doctors' orders should not apply. Opp'n at 9 (capitalization altered); *see also id.* at 12. But even if this theory had legal merit—which LabCorp does not concede—Relators do not allege culpable "encouragement."

The three cases upon which Relators stake their position do not suggest otherwise. *See* Opp'n at 10-12. In *U.S. ex rel. Groat v. Boston Heart Diagnostics Corp.*, 296 F. Supp. 3d 155, 165 (D.D.C. 2017), the defendant allegedly made "false marketing statements regarding the medical necessity of its tests" and also used "pre-printed test requisition forms" to push medically unnecessary testing. Similarly, in *United States v. Berkeley Heartlab, Inc.*, 225 F. Supp. 3d 487, 497-99 (D.S.C. 2016), the defendants allegedly "encouraged physicians to order tests that were medically unnecessary." (The complaint there explicitly alleged that the defendants "promoted the ordering of large panels of tests, many of which were medically unnecessary." Dkt. 75 ¶ 172, *United States v. Berkeley Heartlab, Inc.*, No. 9:14-cv-00230-RMG (D.S.C. Aug. 7, 2015).) Finally, in *U.S. ex rel. Downy v. Corning, Inc.*, 118 F. Supp. 2d 1160, 1172 (D.N.M. 2000), the defendant allegedly "used deceptive test order forms" that forced physicians to always order two tests in tandem. In all three cases, the defendant allegedly promoted unnecessary testing *directly*—through marketing lies (*Groat*), direct encouragement (*Berkeley*), or order-form trickery (*Downy*).

Nothing remotely similar is alleged against LabCorp. Providing IOPs who would draw blood as ordered by the physician is not culpable encouragement. Relators do not suggest that LabCorp sought to influence *how* these IOPs were used—and certainly do not allege (with particularity no less) that LabCorp encouraged doctors to use these IOPs for medically unnecessary tests.

Similarly, Relators' bold allegation that LabCorp purportedly "encouraged" doctors' orders through a supposed "policy" of charging for an IOP's courtesy "blood draw and processing services for referrals to HDL and Singulex [unless] LabCorp also received referrals for lipid testing" is not an allegation that LabCorp promoted medically unnecessary testing.

Opp'n at 13.  Relators do not allege that LabCorp pushed or arranged for patients to receive *unnecessary* tests—unlike in *Groat*, *Berkeley*, and *Downy*, where such tests were the defendants' goal.  Relators' medical-necessity theory should thus be dismissed.

## II.    Relators' Claim for Reverse False Claims Liability Should Be Dismissed.

### A.    Relators Cannot Overcome This Claim's Redundancy.

Theories of false claims liability can sometimes be spun as seeking either "presentment" liability (for the submission of false claims) or reverse false claims liability (for the retention of improperly obtained funds).  As LabCorp has explained, courts—including this Court—have repeatedly held that relators may not embrace this redundancy and seek both types of liability on the same underlying basis.  *See* Opening Br. at 14-15.  Thus, when a claim for reverse false claims "alleges a failure to refund the false claims" that the defendant allegedly submitted, the claim for reverse false claims is duplicative and should be dismissed.  *U.S. ex rel. Ligai v. ETS-Lindgren Inc.*, No. H-112973, 2014 WL 4649885, at *13 (S.D. Tex. Sept. 16, 2014).[2]

Relators confirm that Count II (about reverse false claims) duplicates their other Counts, as LabCorp argued.  As Relators put it, the Counts all concern "the payments [LabCorp] received . . . as a result of its own kickbacks."  Opp'n at 16; *see also id.* (conceding "overlap").  But Relators insist that they may "plead [these] claims in the alternative."  *Id.* at 14.

Relators cite no case, however, that supports this view.  Indeed, Relators cite only two reverse false claims cases in their argument about this Count:  *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217 (11th Cir. 2012), and *U.S. ex rel. Branscome v. Blue Ridge Home Health Servs., Inc.*, No. 7:16CV00087, 2018 WL 1309734 (W.D. Va. Mar. 13, 2018).  *See* Opp'n at 14-19.  The *Matheny* complaint alleged *only* reverse false claim liability and thus had

---

[2] All unreported cases are attached hereto in Exhibit A.

PPAB 4565244v1

no redundancy.  *See* 671 F.3d at 1219-20.  And *Branscome* cuts *against* Relators by confirming that "reverse false claims may not be based on the same conduct as a plaintiff's [presentment] claims"—like the dozen cases that LabCorp previously cited.  2018 WL 1309734, at *5. Relators do not even address those cases, despite implying they are all wrongly decided.

Instead, Relators attempt to differentiate Count II from their other Counts by arguing, first, that LabCorp allegedly "conceal[ed] its obligation to report and return the payments" at issue, which is "distinct conduct" not otherwise relevant.  Opp'n at 15-16.  But that merely reflects how a reverse false claims theory has its own elements.  It does not erase the theory's redundancy:  the purported "obligation" at issue arose because of LabCorp's supposed kickbacks, which are the basis for the other Counts about the same funds.

Relators also argue that their claims cover different time periods:  Counts I, III, and IV cover claims submitted "between early 2010 through 2014," whereas Count II concerns "claims submitted *prior to* the fraud alerts" that LabCorp requested.  Opp'n at 16.  But the "fraud alert[]" in question (there was only one) came out in June 2014, *during* the relevant time period for Counts I, III, and IV.  *See* FAC ¶ 328.  This purported timing distinction thus makes no sense.[3]

This Court has dismissed a duplicative reverse false claims count from Relators once before.  *See United States v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724, 733 (D.S.C. 2017). The same should happen here.

---

[3] Relators also appear to imply that the Counts concern different claims—Count II is about "LabCorp's direct claims" that were allegedly kickback-tainted, while the other Counts concern either "HDL and Singulex's submission of false claims by encouraging medically unnecessary laboratory testing" or LabCorp's submission of medically unnecessary claims.  Opp'n at 16.  But the Complaint does not slice the Counts so thinly.  *See, e.g.*, FAC ¶ 5.  Neither does Relators' brief.  *See* Opp'n at 6 (stating that Counts I, III, and IV concern "[a]ll three schemes").

PPAB 4565244v1

### B.     This Claim Is Not Alleged with the Particularity Required By Rule 9(b).

Count II should also be dismissed under Rule 9(b).  Rule 9(b) requires reverse false claims to be alleged with particularity about "the time, place, [and] substance of any retained overpayments," *Taul v. Nagel Enters., Inc.*, No. 2:14-cv-0061-VEH, 2017 WL 432460, at *13 (N.D. Ala. Feb. 1, 2017), as well as with "details about the source of the alleged [repayment] obligation" and "the parameters of that obligation, such as what trigger[ed] the duty to repay and what sort of repayment it require[d]."  *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 96 (D.D.C. 2014).  The Complaint lacks these particulars.  *See* Opening Br. at 15-16.

Indeed, Relators do not claim that the Complaint includes any details about "retained overpayments."  *Taul*, 2017 WL 432460, at *13.  Tellingly, Relators never mention this requirement.  Instead, citing *Branscome*, Relators argue that Rule 9(b) requires only "identify[ing]" some "obligation to pay funds to the government," the obligation's "parameters," and "an action to conceal or diminish that that [sic] obligation."  Opp'n at 16.

Notwithstanding Relators' citation, *Branscome* neither mentions Rule 9(b) nor discusses what it requires.  *See* 2018 WL 1309734, at *5.  Relators are, at least, correct that *Branscome* cites *Pencheng Si*.  *See* Opp'n at 17.  But *Pencheng Si* found a reverse false claims complaint "*plainly insufficient* under Rule 9(b)" when it failed to identify the payment obligation's "source" and "parameters."  71 F. Supp. 3d at 97 (emphasis added).  The court did not hold that Rule 9(b) requires *only* these details (plus alleged concealment), as Relators argue.  *See id.*  And in *Matheny*, which Relators also cite, the complaint specifically identified the "check number," "amount," and other details of particular overpayments.  671 F.3d at 1227.  Such particularity was absent from (and thus fatal to) the reverse false claims count in *Taul*.  *See* 2017 WL 432460, at *13.  Thus, whatever the source of Relators' looser view of Rule 9(b), it is not the law.

-6-

Moreover, Relators do not adequately allege the payment "obligation" and "parameters" that they concede are necessary. They argue solely that LabCorp had to return overpayments from federal health care programs "within 60 days of *identifying* the overpayment." Opp'n at 17 (citing 42 U.S.C. § 1320a-7k(d)(2)(A)) (emphasis added). To show that LabCorp identified an overpayment, Relators contend that LabCorp knew certain claims "were tainted by kickbacks as early as spring of 2011." *Id.* (citing FAC ¶ 262). In Relators' view, LabCorp's repayment obligation thus "arose no later than 60 days after spring of 2011." *Id.* But LabCorp's purported awareness of wrongdoing by *HDL and Singulex* does not equal the identification of a specific overpayment *made to LabCorp*, particularly when Count II concerns "the payments [LabCorp] received . . . as a result of *its own kickbacks*." Opp'n at 16 (emphasis added). Relators also argue that "LabCorp *could* readily identify the physicians" for whom "LabCorp's claims . . . resulted in the overpayments at issue." Opp'n at 18 (emphasis added). Such conjecture is not an allegation that someone at LabCorp actually *did* identify an overpayment—and says nothing specific about when that identification occurred or how much of an overpayment was identified.

Relators nonetheless claim their accusations have "facial plausibility" (*id.* at 17), but Rule 9(b) requires *particularity*, which this Count utterly lacks. *Cf. Matheny*, 671 F.3d at 1226 (finding reverse false claims theory adequate where "Relators allege that in April 2006 and again in March 2008, Defendants Parazella and Dolan identified $62 million in Overpayments resulting from insufficient documentation and $7 million in Overpayments resulting from duplicate billings or other errors"). For this reason, too, the Count should be dismissed.

## III. Relators Lack Standing for Their State-Law Claims, Which Also Fail Rule 9(b).

### A. Granting Standing Would Ignore the Statutory Text.

Relators argue that anyone can file suit under CIFPA and ICFPA. *See* Opp'n at 20. The California DOI makes the same argument about CIFPA. *See* Cal. Br. at 6-7. Relators even

-7-

claim it would be "illogical" for them to have standing only under the federal FCA.  Opp'n at 25.

But these statutes have different language, which Relators and the California DOI never address.

CIFPA and ICFPA confer *qui tam* standing only upon "*interested* persons."  Cal. Ins.

Code § 1871.7(e)(1) (emphasis added); *accord* 740 Ill. Comp. Stat. Ann. § 92/15(a).  The federal

FCA, in contrast, grants *qui tam* standing to any "person."  31 U.S.C. § 3730(b)(1).  Any

"person" can also file suit under the California and Illinois FCA analogs for false claims for

government (as opposed to private-insurer) payment.  *See* Cal. Gov't Code § 12652(c)(1); 740

Ill. Comp. Stat. Ann. § 175/4(b)(1).  These contrasting uses of "interested person" and "person"

underscore that not everyone can sue under CIFPA and ICFPA.  Otherwise, the word

"interested" would have no meaning, despite the well-settled rule against "a [statutory]

construction making any word surplusage."  *Reno v. Baird*, 957 P.2d 1333, 1344 (Cal. 1998)

(citation omitted); *see also Mulry v. Berrios*, 72 N.E.3d 1260, 1265 (Ill. App. 2017).

Instead of addressing the statutory text, Relators and the California DOI both highlight

*People ex rel. Strathmann v. Acacia Research Corp.*, 210 Cal. App. 4th 487 (Cal. Ct. App.

2012).  While the court in *Strathmann* stated that a CIFPA relator needs "no personal stake in the

damages sought," the *Strathmann* relator was the defendant's *former employee*.  *See id.* at 494,

500; Opp'n at 20.  The case thus merely confirms that a defendant's employee can qualify as an

"interested person" without being personally damaged.  (LabCorp has never argued that personal

damages are necessary, even though Relators and the California DOI both target that position.)

To make more of *Strathmann*, Relators misquote the decision as explaining that the

employee was "an 'interested person' *by virtue of* his status as a qui tam relator."  Opp'n at 20

(emphasis added).  *Strathmann* actually only described the relator as "an 'interested person'

bringing this action as a qui tam relator," without suggesting that *qui tam* status *supplies* the requisite interest.  210 Cal. App. 4th at 500.  Read correctly, the case does not help Relators.

*People ex rel. Alzayat v. Hebb*, 18 Cal. App. 5th 801 (Cal. Ct. App. 2017), also does not help Relators.  The California DOI calls this case "controlling."  Cal. Br. at 5 n.3.  But *Alzayat* again concerns a relator who was employed by the defendant, and again confirms simply that the relator need not have "suffered his or her own injury."  18 Cal. App. 5th at 807, 831.

Indeed, Relators and the California DOI do not cite *any* case that suggests that all citizens have standing under CIFPA or ICFPA.  Nor do they overcome LabCorp's cited authority, which (unlike their position) gives meaning to the term "interested."  *See* Opening Br. at 16-17. This Court need not decide exactly what constitutes a sufficient interest to confer standing.  Here, all that matters is that Relators must have *some* interest that sets them apart from the general populace—as they would otherwise be just "persons," not "*interested* persons."  Relators do not claim any such interest.  *See* Opp'n at 19-21.  Relators' state-law claims should be dismissed as a result.

Finally, the Court should not "decline to dismiss" the CIFPA claim on this basis because the State of California might "intervene in the lawsuit."  Opp'n at 21.  California declined to intervene.  *See* Dkt. 30.  Although the State may still intervene "upon a showing of good cause," Cal. Ins. Code § 1871.7(f)(3), nothing in CIFPA calls for dismissals to be held in abeyance. Relators cite no authority for this novel request, which even the California DOI does not join.

### B.     Relators' Vague Suggestion of a "Nationwide Scheme" Fails Rule 9(b).

Relators' CIFPA and ICFPA claims should also be dismissed under Rule 9(b).  Relators try to frame this argument as a "repackaged" version of what Defendant Latonya Mallory (HDL's CEO) unsuccessfully argued in the BlueWave litigation.  Opp'n at 22.  But LabCorp and Mallory are different parties in completely different positions; her fate does not control LabCorp.

-9-

As to LabCorp, Relators concede that—as LabCorp argued—their Complaint does "not identify specific claims submitted to California or Illinois insurers." Opp'n at 22; *see* Opening Br. at 19-21. Relators claim such particularity is not required if they allege "facts establishing an inference of nationwide fraud." Opp'n at 22.

But the Fourth Circuit has expressly rejected a view of Rule 9(b) under which "a relator need only allege the existence of a fraudulent scheme that supports the inference that false claims were presented . . . for payment." *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013). Notably, other than this Court's decision with Mallory, Relators support their argument exclusively with three district-court decisions from other circuits that follow a more relaxed view of Rule 9(b). Two of these courts expressly invoked their circuits' Rule 9(b) leniency. *See U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 174-75 (E.D. Pa. 2012) (emphasizing Third Circuit's standard as "generous" and "relaxed"); *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 238 F. Supp. 2d 258, 269 (D.D.C. 2002) ("The D.C. Circuit has taken a generous approach to pleadings."). The third court similarly set a low bar. *See U.S. ex rel. Drennen v. Fresenius Med. Care Holdings, Inc.*, No. 09-10179-GAO, 2012 WL 8667597, at *1-2 (D. Mass. Mar. 6, 2012) (citing *U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 30 (1st Cir. 2009) ("*Duxbury I*")); *U.S. ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 719 F.3d 31, 38 (1st Cir. 2013) (*Duxbury I* applied a "more flexible Rule 9(b) standard"). The Fourth Circuit is not as lenient. *See, e.g.*, *Nathan*, 707 F.3d at 455-56.

As for this Court's rejection of the similar argument made by Mallory, the Court emphasized allegations that HDL was "paid by private insurers with clients in Illinois and California who were referred for testing due to the scheme" and also "offered [improper] P&H fees to physicians in California and Illinois." *Berkeley*, 225 F. Supp. 3d at 508-09. The

-10-

complaint also identified "several physicians in various states, including California," who were targeted by the scheme. *Id.* at 509. Overall, then, that complaint had specific allegations (with "specific incidents") that HDL engaged in fraud in California and Illinois. *Id.*

Not so here, with respect to the fraud alleged against *LabCorp*. Relators do not dispute that the Court should disregard their information-and-belief allegations about how the purported fraud reached "private insurers in California and Illinois." FAC ¶ 564; *see* Opening Br. at 19. Relators instead flag other allegations that, in their view, "suggest[] that the fraud occurred in California and Illinois." Opp'n at 23. But the only highlighted allegations that concern LabCorp describe routine business practices, not a fraud: LabCorp did business with private insurers in California and Illinois and tracked which doctors were using competitor labs. Opp'n at 23, 25. There are *no* allegations that (1) LabCorp IOPs drew blood that was tested by HDL and Singulex to generate tainted claims submitted to private insurers in California or Illinois; (2) LabCorp IOPs tainted LabCorp's own claims submitted to private insurers in either state; or (3) LabCorp encouraged medically unnecessary tests for privately insured patients in those states.

In short, then, the specifics that sustained the state-law claims against Mallory are entirely lacking here. *See Berkeley*, 225 F. Supp. 3d at 509. This requires Relators' state-law claims to be dismissed. *See, e.g., U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 1:11-CV-962-WSD, 2013 WL 2303768, at *7 (N.D. Ga. May 17, 2013) (Rule 9(b) "proscribe[s]" an "inferred" scheme of "nationwide conduct"); *U.S. ex rel. Bates v. Dentsply Intern., Inc.*, No. 12-7199, 2014 WL 4384503, at *10 (E.D. Pa. Sept. 4, 2014) (Rule 9(b) requires "location-specific facts," not "'conclusory' references" that connect a defendant's conduct to specific states).

Separately, even if the Complaint adequately linked LabCorp to claims submitted to private insurers in California and Illinois, Relators have not alleged that those claims breached

the applicable policies. *See* Opening Br. at 21-22. Relators do not disagree. *See* Opp'n at 24. Relators instead argue that "kickback-tainted claims" always violate CIFPA and ICFPA. *Id.* Even if so (which LabCorp does not concede), Relators make no such argument for medically unnecessary claims. On this basis, at least Relators' medical-necessity theory should be dismissed under CIFPA and ICFPA. *See, e.g.*, *Maa v. Ostroff*, No. 12-CV-00200-JCS, 2013 WL 1703377, at *21 (N.D. Cal. Apr. 19, 2013) (dismissing medical-necessity theory under CIFPA).

## IV. Relators' Conspiracy Claims Should Be Dismissed.

Relators' claims about an alleged conspiracy between LabCorp, HDL, and Singulex should also be dismissed. Under this purported conspiracy, HDL and Singulex would secure referrals through kickbacks, and LabCorp would then "draw and process the sample for the referral to HDL/Singulex, which would run the test." Opp'n at 26 (citation omitted). But Relators allege neither that LabCorp, HDL, and Singulex formed "an unlawful agreement" to secure the reimbursement of false claims, nor that LabCorp, HDL, and Singulex "shared a specific intent to defraud the Government." *U.S. ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 584 (E.D. Va. 2010); *see* Opening Br. at 23-24.

These elements must be alleged with particularity. *See U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 282 (4th Cir. 2014). Relators argue that the "agreement may be inferred from a course of conduct," but they draw this rule from an *antitrust* case. Opp'n at 27 (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015)). That case applied a basic plausibility standard, not "the more stringent particularity requirement of Rule 9(b)" that applies here. *Ahumada*, 756 F.3d at 282. Thus, Relators must specifically identify the agreement underlying the conspiracy, including "*who* at [LabCorp] entered" the agreement and "*when* he or she did so." *Id.*; *see also, e.g., U.S. ex rel. Westfall v. Axiom Worldwide, Inc.*, No. 8:06-cv-571-T-33TBM, 2009 WL 1424213, at *6 (M.D. Fla. May 20, 2009); *U.S. ex rel. Capella v. Norden*

-12-

*Sys., Inc.*, No. 3:94-cv-2063 (EBB), 2000 WL 1336487, at *11 (D. Conn. Aug. 24, 2000); *U.S. ex rel. Dekort v. Integrated Coast Guard, Sys.*, 705 F. Supp. 2d 519, 548 (N.D. Tex. 2010). Similarly, LabCorp's "specific intent to defraud" must be alleged with particularity. *See, e.g.*, *U.S. ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 208 (E.D. Tex. 1998).

### A.    Relators Do Not Allege an "Unlawful Agreement" Between LabCorp, HDL, and Singulex.

Relators do not (and cannot) identify any particularized allegations about an unlawful agreement between LabCorp, HDL, and Singulex. *See* Opp'n at 28-31.  Instead, they offer a scattershot of arguments that all fall short.

For example, Relators argue that LabCorp drew blood "for referrals to both companies and also pursued business relationships with HDL and Singulex." *Id.* at 28.  But LabCorp drew this blood on doctors' orders, as a courtesy to patients. *See* Opening Br. at 1-2.  Relators do not allege that LabCorp had any agreement with HDL or Singulex about the practice.  And discussions of a *possible* business relationship (even if extensive) obviously do not amount to an actual *agreement*—much less an agreement to defraud—which is what conspiracy requires. *See, e.g.*, *United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 50-51 (D.D.C. 2011) (explaining that alleged "meetings between Toyobo and vest manufacturers" do not "support the inference that Toyobo and the vest manufacturers entered into any agreements for the purpose of getting the government to pay a claim").  Thus, Relators' blow-by-blow of LabCorp's supposed "high-level meetings" with HDL and Singulex does not move the needle for alleging that the three companies actually agreed to defraud the government.  Opp'n at 29.

Relators also argue that "LabCorp performed tests for HDL" and also agreed "to perform some of the tests on the Singulex panel," which resulted in both companies being invoiced by LabCorp.  Opp'n at 29 (citing FAC ¶¶ 388, 436, 445).  But a conspiracy claim cannot rest on an

agreement outside the conspiracy's scope. *See, e.g.*, *U.S. ex rel. Lisitza v. Par Pharm. Cos., Inc.*, 276 F. Supp. 3d 779, 808 (N.D. Ill. 2017) (rejecting conspiracy claim based on agreement to violate Medicaid rules instead of FCA, because "[t]he object of the conspiracy must be to make false or fraudulent claims"). These alleged agreements (which are not even alleged with particularity) concern LabCorp *performing tests* for HDL and Singulex. *See* FAC ¶¶ 388, 436, 445. Even as described by Relators, those arrangements do not fit within the alleged conspiracy, under which HDL or Singulex—not LabCorp—"would run the test[s]." Opp'n at 26.

Thus, far from supporting Relators as they claim, *U.S. ex rel. DeCesare v. Americare In Home Nursing*, No. 1:05cv696, 2011 WL 607390 (E.D. Va. Feb. 10, 2011) highlights the Complaint's deficiencies. Relators emphasize how *DeCesare* did not dismiss conspiracy allegations because the defendant was allegedly aware of unlawful conduct. *See* Opp'n at 27-28. In fact, the *DeCesare* complaint detailed an agreement underlying the conspiracy. *See* 2011 WL 607390 at *3 (explaining terms of improper "referral network" that included the defendant). Relators have no similar allegations of an agreement, and *DeCesare* thus cannot help them. *See Lisitza*, 276 F. Supp. 3d at 806 (conspiracy requires "not merely knowledge but an agreement").

Relators also invoke this Court's decision not to dismiss the conspiracy claim in the BlueWave litigation. But that litigation did not involve LabCorp. There, moreover, the claim survived because "[t]he complaint alleges the existence of an agreement between Defendants to violate the FCA." *Berkeley*, 225 F. Supp. 3d at 502. Relators note this Court's description of the agreement as having only "supercharged" a preexisting scheme, but the Court's decision treats the agreement as essential to the purported conspiracy. *See id.* With no similar alleged agreement that includes LabCorp, Relators' conspiracy claims should be dismissed.

-14-

**B.    Relators Do Not Adequately Allege that LabCorp Shared a Specific Intent to Defraud the Government with HDL and Singulex.**

Relators also do not allege with plausibility (much less particularity) that LabCorp, HDL, and Singulex shared a common, specific intent to defraud the government.  As the opening brief explained, Relators' contrary position should be rejected given that LabCorp reported its purported co-conspirators (and competitors) to the OIG—hardly the conduct of a co-conspirator.

But Relators double down.  They claim that LabCorp tried "to conceal its involvement" with "bogus requests for fraud alerts," and that "LabCorp's conduct was entirely consistent with that of a duplicitous bad actor seeking to play two roles" by reporting HDL and Singulex while simultaneously conspiring with them.  Opp'n at 32.  That is irrational.  If LabCorp wanted to conceal its conduct, it would not have *twice* flagged the alleged conspiracy—thereby inviting investigation into its own business practices.  Indeed, the fact that Relators argue that LabCorp's conduct was "*consistent with*" their farfetched theory says it all.  *Id.* (emphasis added).  "Where a complaint pleads facts that are 'merely *consistent with*' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (emphasis added).  For this reason, too, Relators' conspiracy claims should be dismissed.

## <u>CONCLUSION</u>

For the reasons stated above and in LabCorp's opening brief, the Motion to Dismiss should be granted.

Dated:  November 16, 2018                    Respectfully submitted,

                                            */s/*James Lynn Werner
                                            _____
                                            James Lynn Werner
                                            Fed. Bar. No. 1079
                                            John G. Tamasitis
                                            Fed. Bar No. 11995
                                            Parker Poe Adams & Bernstein, LLP
                                            1221 Main Street, Suite 1100
                                            Columbia, South Carolina 29201
                                            Phone: (803) 253-8913
                                            Fax: (803) 255-8017
                                            Email: jimwerner@parkerpoe.com
                                                   johntamasitis@parkerpoe.com

                                            Stephen G. Sozio (*admitted pro hac vice*)
                                            Ohio Bar No. 0032405
                                            JONES DAY
                                            901 Lakeside Avenue
                                            Cleveland, Ohio  44114
                                            Phone:  (216) 586-3939
                                            Fax:     (216) 579-0212
                                            Email:   sgsozio@jonesday.com

                                            Heather M. O'Shea (*admitted pro hac vice*)
                                            Illinois Bar No. 6287953
                                            JONES DAY
                                            77 West Wacker Drive
                                            Chicago, Illinois 60601
                                            Phone:  (312) 782-3939
                                            Fax:     (312) 782-8585
                                            Email:   hoshea@jonesday.com

                                            Rajeev Muttreja (*admitted pro hac vice*)
                                            New York Bar No. 4773057
                                            JONES DAY
                                            250 Vesey Street
                                            New York, New York 10281
                                            Phone:  (212) 326-3939
                                            Fax:     (212) 755-7306
                                            Email:   rmuttreja@jonesday.com

                                            Casteel E. Borsay (*admitted pro hac vice*)
                                            Ohio Bar No. 0092620
                                            JONES DAY
                                            325 John H. McConnell Blvd.

Columbus, Ohio 43215
Phone:  (614) 469-3939
Fax:      (614) 461-4198
Email:   cborsay@jonesday.com

*Counsel for Laboratory Corporation of
America Holdings*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing ***REPLY IN SUPPORT OF LABORATORY CORPORATION OF AMERICA HOLDINGS' MOTION TO DISMISS FOURTH AMENDED QUI TAM COMPLAINT*** was filed through the Court's ECF system on November 16, 2018, notice of which will be sent electronically to all counsel of record.

/s/James Lynn Werner, Esq.
*Counsel for Laboratory Corporation of America Holdings*