IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| The United States of America et al, ex rel. | ) | |
| Scarlett Lutz and Kayla Webster | ) | |
| | ) | C/A No.: 9:14-cv-3699-RMG |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Laboratory Corporation of America Holdings, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIRD PARTY FLOYD CALHOUN DENT, III'S OBJECTION TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MOTION TO MODIFY SUBPOENA**

Third Party Floyd Calhoun Dent, III, ("Dent") by and through his undersigned counsel, hereby objects to Plaintiffs' motion to enforce their subpoena duces tecum to Dent pursuant to Federal Rules of Civil Procedure 37 and 45. In essence, Movant seeks to require Dent to replicate the entire, massive discovery that he has provided to the Government in the *Bluewave* litigation. This Court is well aware of the vast breadth and depth of that discovery. The undersigned counsel has tried, to no avail, to accommodate Movant's request without having to incur significant expense on Dent's behalf. Dent is forced to object to Movant's Motion to Compel because he is not a party to, and he has no interest in, this litigation and should not be forced to bear the expense of providing discovery in it. Even if he had an interest in this case, he is not permitted to incur legal expense without leave of this Court. Movant can obtain the documents it requests elsewhere – specifically, from the United States, which has the resources to process the document production that Movant requires. For these reasons, the Court should; (1) limit Dent's search requirements to

specific search terms specifically targeted to locate relevant documents, and; (2) require Plaintiffs to compensate Dent for all legal costs associated with subpoena compliance.

## BACKGROUND

Dent has no connection to Laboratory Corporation of America Holdings and has never worked for or contracted with Laboratory Corporation of America Holdings. He does not believe that he has many documents materially related to Plaintiffs' allegations against Laboratory Corporation of America Holdings. The potentially responsive materials which Dent does have are contained in voluminous electronic files compiled from both defense and United States document production in *United States, et al., ex rel Scarlett Lutz and Kayla* Webster v. *Berkeley Heartlab, et al.*, 9:14-cv-00230-RMG.

On May 23, 2018, this Court entered judgment in the amount of $114,148,661.86 against Dent in *United States, et al., ex rel Scarlett Lutz and Kayla Webster v. Berkeley Heartlab et al.,* 9:14-cv-00230-RMG. Dent has appealed that judgment to the Fourth Circuit Court of Appeals and the matter is awaiting argument. After judgment was entered, Mr. Dent moved for a stay of execution upon his assets pending appeal and for a supersedeas bond. Given the size of the judgment, purchasing a bond was not feasible, so after extensive negotiations through a mediator, Mr. Dent and the United States entered into an agreement whereby Dent's assets were frozen and placed under the court's supervision. These proceedings remain under seal and the specifics of the transactional rules will not be discussed in this objection but are familiar to this Court and significantly limit Dent's ability to retain and pay counsel to represent him in unrelated legal matters.

On November 7, 2019, counsel for Dent received a subpoena from the Plaintiffs requesting production of twelve document classes:

1.      A copy of all documents produced by you in response to any investigation by or on behalf of the U.S. Department of Justice )(the "government"), including any subpoena or Civil Investigative Demand (CID) from the government in connection with its investigation of LabCorp, HDL, Singulex, BlueWave, Floyd Calhoun Dent, III, Robert Bradford Johnson, or Latonya Mallory.  This request includes but is not limited to all documents produced by you in the matter United States ex rel. Lutz et al v. Berkeley Heartlab et al., Case No. 9:14-cv-230 (D.S.C.). The documents should be produced as they were to the government, e.g., bearing any Bate numbers or other identifiers with which you labeled the documents.

2.      All documents related to any BlueWave internal compliance audits, financial audits, and any audits of agreements or contracts relating to phlebotomy services or compensation for processing and handling of samples.

3.      All documents discussing phlebotomy services provided by or to be provided by LabCorp.

4.      All documents related to payments you or BlueWave made to LabCorp.

5.      All documents related to payments to LabCorp, BlueWave, Singulex, or HDL made to you.

6.      All documents related to, or referring, LabCorp including but not limited to David P. King, Anil Asnani, Ben Miller, Joan Atkins, Bill Merriman, or Adrianne Overbay.

7.      All documents regarding the legality of or compliance issues related to offering or accepting processing and handling fees or draw fees.

8.      All documents related to concerns or issues raised by BlueWave regarding the payment of process and handling fees and/or draw fees to physician practices where a third-party including LabCorp provided any part of the phlebotomy services.

9.      All documents regarding training you received or provided to anyone affiliated with BlueWave, or any independent contractors, related to the Anti-Kickback Statute, 42 U.S.C. §1320a-7b(b); the Stark Law, 42 U.S.C. § 1395nn(a)(1); and the False Claims Act, 31 U.S.C. § 3729, *et seq*.

10.     All documents related to valuations or analyses of the phlebotomy services for which HDL or Singulex paid physician practices.

11.     All documents related to Dr. Miller's practice.

12.     Your calendars between January 1, 2009 and December 31, 2015, including calendars kept for you by your assistant, secretary, or other support personnel.

The history of Dent's compliance with document requests and Civil Investigative Demands by the United States government related to BlueWave Healthcare Consultants, Health Diagnostic Laboratories, and Singulex is extensive and dates back to 2013. During that time, Dent, his business partner Robert Bradford Johnson, and BlueWave have compiled and produced hundreds of thousand pages of materials to the United States. For this purpose, the parties initially retained the Alabama law firm of White Arnold and Dowd to compile, review, and produce these documents to the United States Department of Justice at tremendous cost. These materials were produced to the United States electronically and under the United States' specific Electronically Stored Information (ESI) protocols. These ESI protocols required all submissions to contain not only the document itself, but also the metadata behind the documents showing items such as its creator, custodian, and chain of custody. Following this protocol required the use of electronic discovery reader programs such as Concordance, Relativity, Nextpoint, or a host of other available programs. It also required hiring outside contractors and otherwise employing people with the expertise to operate and manage the electronic discovery software. These programs and contractors came at a considerable financial cost.

After the qui tam complaint against Mr. Dent was unsealed in 2015 in *United States, et al., ex rel Scarlett Lutz and Kayla Webster v. Berkeley Heartlab et al.,* 9:14-cv-00230-RMG, ("Bluewave Litigation") BlueWave, Dent, and Johnson re-produced the documents compiled in compliance with the civil investigative demand and engaged in additional extensive discovery with the United States. During that process, additional millions of pages of documents were exchanged between the parties through the same ESI protocols. Many more subpoenaed documents were also received and exchanged between the parties. As with compliance with the civil investigative

demand, the cost to comply with the government's ESI protocols in the Bluewave Litigation was very high.   For example, the cost to purchase a license to operate the Concordance electronic discovery program alone was over thirty-six thousand dollars and Bluewave spent almost nine thousand dollars more for an outside electronic discovery contractor to compile documents and create document productions in the specified ESI protocols in response to the United States' discovery demands.   In addition, the BlueWave defendants were required to receive, load, and review the United States' 26 separate document production responses over a period of two years. In total, during the BlueWave Litigation, the defendants produced 455,464 pages of material and the United States produced 2,944,513 pages of material.   These materials all potentially contain documents responsive to Plaintiffs' subpoena.

Upon receiving the subpoena in this case, Dent's counsel cataloged the volume of potentially responsive materials and quickly realized the enormity of task of complying with the subpoena.   While the documents themselves are available on a file server held at the Barnwell Whaley law firm, counsel had no way to review them for relevance and privilege, as BlueWave's license for the Concordance electronic discovery reader used in the BlueWave Litigation had expired.   The cost to renew that license or obtain another license is prohibitive given Dent's financial constraints. Furthermore, the documents themselves are co-owned by BlueWave and by Dent's BlueWave business partner, Robert Bradford Johnson's, whose separate documents are comingled with Dent's documents. No separate subpoena has been issued to Bluewave or to Johnson.   Johnson is subject to protections afforded to him by operation of the Bankruptcy Code as he is currently a debtor in possession under Chapter 11.   The presence of Johnson's documents and the necessity to avoid producing Johnson's confidential, privileged, or otherwise irrelevant

information require Dent's counsel to carefully review all documents in the production. These efforts are unavoidable and costly.

In response to the subpoena, Dent's counsel immediately communicated with Plaintiffs' counsel regarding the technological and cost constraints. (See Ex. 1 November 20, 2019 email) and continued to seek a mutually agreeable solution. (See Ex. 2 December 6, 2019 email). At the same time, Dent's counsel searched for an electronic discovery program that would allow them to search the documents efficiently and economically in order to comply with the subpoena.

Throughout December, the parties negotiated for a solution that would allow the Plaintiffs to host documents on its server and utilize its Relativity electronic discovery reader to search for responsive documents. Under a claw-back agreement, Dent's counsel would review the documents selected by Plaintiffs' counsel under its search terms. Ultimately, however, these negotiations failed as Mr. Dent could not consent to allowing his electronic property to be hosted on an adverse parties' file server and nor could Dent produce documents potentially belonging to Johnson. Dent did not refuse to comply; he simply cannot allow the attendant security risks of placing his and Johnson's documents on Plaintiffs' file server.

Dent's counsel searched for a resolution to these issues, which resulted in hiring Nextpoint, an integrated e-discovery provider, to host the documents its server and provide an electronic discovery reader program at a nominal monthly cost. This arrangement would allow Dent's counsel to search the documents based upon a limited search term list negotiated by the parties.

Counsel agreed on January 14, 2020 to a list of search terms consisting of: LabCorp; Laboratory Corporation of America; LCA, Dave King, Asnani, Sbertoli, Ben Miller, IOP, In-office phlebotomist, PSC, patient service center, draw site, and courtesy draw. Dent's counsel

immediately began loading the documents into Nextpoint. However, given the volume of material and time that it took to load and search, it was apparent that the cost of compliance would be significant. Furthermore, the program did not allow Dent to produce the documents with the metadata requested by Plaintiff. When informed of this limitation, Plaintiffs' counsel again requested a production with all metadata preserved. (See Ex 3 January 22, 2020 email). This request was beyond Dent's technological capabilities, but Dent could produce files as TIFF images without the attendant metadata. Dent's counsel informed Plaintiffs' counsel of this fact during conference calls to discuss the production.

Dent's counsel went back to Nextpoint with the challenges surrounding the production and negotiated with Nextpoint to download the entire production at a minimal cost including all documents placed into a searchable format with all metadata preserved. Personnel at Barnwell Whaley copied the entire file server and sent it to Nextpoint for uploading and searchable file creation. After approximately two weeks, Nextpoint informed Mr. Dent's counsel that technical issues were preventing it from loading the files at minimal cost as promised. Nextpoint instead stated that the task could be accomplished for the sum of $25,000.00. At that point, Mr. Dent's counsel had already spent considerable time from November 2019 forward attempting to comply with the subpoena and informed Plaintiffs' counsel of the $25,000 cost. Plaintiffs' counsel refused to cover the cost and instead proposed again that it be allowed to host the documents under the arrangement discussed in December 2019. (See Exhibit 4 February 18, 2020 email). This arrangement was still not acceptable to Mr. Dent for the reasons previously stated.

Despite the technical setbacks encountered, Dent's counsel has been able to successfully search approximately 10% of the total document volume with no outside vendor cost to Dent. These searches have been made of the following document volumes based upon Plaintiffs'

provided search terms:   119,501 searched documents yielded 570 non-privileged documents with metadata available; 114,351 searched documents yielded 533 non-privileged documents with no metadata available.  The remaining documents reside on the Barnwell Whaley file server but have not yet been searched as there is no available electronic discovery reader.

The successful document searches have required scanning each document database for each of the fourteen search terms mentioned above.  While this process is automated through the e-discovery program, the process of loading and running each search requires considerable time.  The automated process is also not infallible and requires human intervention to make sure that the located documents comply with the search terms.  It is also necessary to review the located documents for privileged documents and remove documents which pertain only to Brad Johnson or are otherwise non-responsive.  To date, personnel from Barnwell Whaley have spent well over 50 hours in three months on this processing and searching.

These searched items are currently available for production.  However, to date, Dent has received no offer of compensation from the Plaintiffs' for his counsels' time in searching and producing the documents according the Plaintiffs' proposed search terms.  Mr. Dent does not have the resources to pay these costs, even if he had some interest in this litigation.

Furthermore, Movants have requested and received from the United States the BlueWave Litigation discovery files. While Dent's counsel has not examined these newly produced documents, it is entirely possible that the Plaintiffs now have all documents requested in this subpoena.  Further efforts to examine and produce these documents would likely be duplicative and unnecessary.

## ARGUMENT

I.    **THIRD PARTY DENT'S BURDEN IN PRODUCING THE REQUESTED DOCUMENTS OUTWEIGHS ANY LIKELY BENEFIT TO PLAINTFF**

Civil discovery is not limitless, and under Rule 26 the information must be both relevant and proportionate to the needs of the case which requires the court to consider whether the burden or expense of the proposed discovery outweighs its likely benefit.   Fed. R. Civ. P. 26(b)(1). However, discovery on non-parties, as is the case here, is restricted even further because those parties have no interest in the litigation and therefore have different expectations: "Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019).   While many documents may be potentially relevant, the ultimate question is whether the "burden or expense of the proposed discovery outweighs its likely benefit." *Id*. at 189.   This is particularly true for a non-party whose status conveys special weight to the burden versus benefit analysis, "leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." *Id.* at 189 (quoting *in re. Public Offering PLE Antitrust Litigation*, 427 F.3d 49, 53 (1st Cir. 2005)).

When conducting the burden versus benefit analysis, "on the benefit side of the ledger, courts should consider not just the relevance of information sought, but the requesting party's need for it.  *See Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 818 (5th Cir. 2004). The information sought must likely (not just theoretically) have marginal benefit in litigating important issues. (We mean 'marginal' in the economic sense that the information must offer some value over and above what the requesting party already has, not in the sense that a mere *de minimis* benefit will suffice.) Courts should also consider what information is available to the requesting party from other sources. *See* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE

AND PROCEDURE § 2463.1, at 501–06 (3d ed. 2008). To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation—or, in appropriate cases, from other third parties that would be more logical targets for the subpoena." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 190 (4th Cir. 2019).

The burden side of the ledger also requires the court to consider not only the monetary costs associated with large document productions but also privacy, confidentiality, and the sheer breadth of the request. *Id.* at 190. "A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should've done that before serving it." *Id.* at 190. "A subpoena that would require a non-party to incur excessive expenditure or time or money is unduly burdensome." *Cook v. Howard*, 484 Fed. App'x 805, 812n.7 (4th Cir. 2012).

In this case, the subpoena has requested twelve separate categories of items which Movant claims "establish the depth of LabCorp's' relationship with, and knowledge of activities concerning, their co-conspirators Dent and BlueWave." (Dkt. No. 114, Pg. 3). These categories are facially overly broad in that Mr. Dent contends that he had no relationship to LabCorp and never conspired with LabCorp to violate any federal or state law. But regardless, after reviewing the subpoena, Dent's counsel realized that some of the items requested in the subpoena, such as responses to the Civil Investigative Demand and information regarding phlebotomy services provided by LabCorp, might be relevant to Movant's case. It was also apparent that locating them would require an electronic document reader and a review of the documents for privilege. Both obtaining the reader and reviewing the documents would be an enormously expensive and time-consuming task. For this reason, counsel immediately contacted LabCorp's counsel for necessary

limitations on scope. In doing so, the parties specifically noted their continuing meeting and conferring to resolve the matter without the necessity of seeking guidance from the court. (See Exhibit 5 December 6, 2019 email). For this reason, Dent did not file a formal objection to the subpoena.

But regardless of Dent's efforts, the information requested by the subpoena is available from at least six other non-parties including Health Diagnostic Laboratory, Singulex, Robert Bradford Johnson, Tonya Mallory, Dr. Lloyd Miller, or BlueWave Healthcare Consultants, and the United States. While Johnson, Mallory, and BlueWave likely have similar financial constraints as Dent, there is no reason that the Plaintiffs cannot obtain these documents from Health Diagnostic Laboratory or Singulex (or their successors in interest). Furthermore, the fact that the Plaintiffs now have in their possession the United States entire litigation discovery through Plaintiffs' *Touhy* motion removes any marginal benefit to the Plaintiffs from seeking what amounts to the same documents from Dent. Dents' burden in compliance significantly outweighs Plaintiffs' benefit from receiving these documents.

II.     **PLAINTIFF'S PROPOSAL TO HOST DOCUMENTS FAILS TO ADDRESS DENT'S COST IN REVIEWING THE DOCUMENTS FOR PRIVILEGE**

If, after weighing these competing considerations, the court orders production over the objection of a non-party, "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *In re Subpoena of American Nurses Association*, No. 15-1481, 15-1803 (4th Cir. April 7, 2016). That protection includes shifting of costs to the requesting party—including any related attorney's fees incurred in reviewing the production for assertions of privilege and confidential information.

As stated previously, Dent's counsel has already expended considerable time in reviewing available documents for production. These efforts have resulted in locating documents pertaining to LabCorp, but many of which appear to be entirely irrelevant to Plaintiffs' causes of action. For example, a search for "LabCorp" has yielded a footnote from a medical journal article which mentions LabCorp and a resume of a person never actually employed by BlueWave, HDL, or Singulex which lists Lab Corp as a prior employer. Indeed, of the approximately 233,852 already searched, the LabCorp employees listed in the Plaintiffs' search terms (Dave King, Ben Miller, and Mr. Asnani) have resulted in only 6 documents mentioning them at all. The broader search terms such as LabCorp, Laboratory Corporation of America, "in-office phlebotomist", "patient service center", "draw site", or "courtesy draw" have resulted in significantly more potentially responsive documents, which must be reviewed for privilege and to ensure that Dent does not inadvertently disclose a document owned by or pertaining only to Robert Bradford Johnson.

The Plaintiffs' proposal to host the documents on its Relatively server addresses only a small part of the cost issue for Dent. The larger cost is the requirement that Dent's counsel review all documents for privilege and relevance and to ensure that they do not inadvertently disclose documents pertaining to Robert Bradford Johnson. Dent has no financial ability to bear these costs and there is no reason to require him to do so even if he did have the ability.

## CONCLUSION

Mr. Dent recognizes the obligations created by the subpoena, but these obligations are not unlimited, nor can they impose an unreasonable burden on Dent. For these reasons, the Court should issue an order modifying the subpoena; (1) limit Dent's search requirements to specific, limited search terms specifically targeted to locate relevant documents; and (2) require Plaintiffs to reimburse Dent for all legal costs associated with subpoena compliance; or (3) direct the

Plaintiffs to seek these documents from other available third parties with substantially similar documents.

Respectfully submitted,

/s/ M. Dawes Cooke, Jr.
M. Dawes Cooke, Jr., Esquire (Fed. #288)
Christopher M. Kovach, Esquire (Fed. #10751)
Barnwell Whaley Patterson & Helms, LLC
288 Meeting St., Ste 200 (29401)
Post Office Drawer H
Charleston, South Carolina 29402
T: (843) 577-7700 / F: (843) 577-7708

*Attorneys for Defendant Floyd Calhoun Dent, III*

May 12, 2020
Charleston, South Carolina

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which forward an electronic copy to the United States counsel.

/s/ M. Dawes Cooke, Jr.