**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

UNITED STATES OF AMERICA et al., EX REL.
SCARLETT LUTZ and KAYLA WEBSTER,

    Plaintiffs/Relators,

    v.

LABORATORY CORPORATION OF
AMERICA HOLDINGS,

    Defendant.

C/A No.  9:14-cv-3699-RMG

## PLAINTIFFS-RELATORS' MOTION TO COMPEL

Plaintiffs-Relators Scarlett Lutz and Kayla Webster ("Plaintiffs") are pursuing this non-intervened False Claims Act ("FCA") case on behalf of the United States against Laboratory Corporation of America Holdings ("LabCorp"). At least 70 percent of Plaintiffs' recovery will go to the Government and then ultimately the taxpayers.  This case was unsealed when the Government declined to intervene.  At that point, under the FCA, the Government's investigation ended and the litigation phase of this case began. For the first time, the Plaintiffs were statutorily charged with pursuing the litigation.  Following the Court's decision on LabCorp's motion to dismiss, discovery commenced. This discovery process is the Plaintiffs' first opportunity to seek and obtain information from the Defendants. Plaintiffs merely seek the same discovery that the civil rules afford to all litigants.  In particular, Plaintiffs file this Motion to Compel LabCorp to: (1) provide (a) proper responses to Plaintiffs' First Requests for Production ("RFPs") and (b) a supplemental production of documents not included in its prior production during the

Government's investigation; (2) identify appropriate custodians for email discovery; and (3) amend its privilege logs to include all withheld documents created on or before January 1, 2015.

**First,** LabCorp has taken the untenable position that it has no duty to produce any documents to Plaintiffs beyond the same set of documents it previously produced to the Government during the Government's sealed investigation (the "Reproduction"). (*See infra* Part III.A–C.) Relying on this position, LabCorp improperly refuses to provide Rule 34-compliant responses to Plaintiffs' RFPs—that is, responses identifying the RFPs for which LabCorp believes it has produced all responsive documents in its possession, as well as the RFPs for which LabCorp has withheld responsive documents on some grounds. Because Plaintiffs' RFPs are materially different from the document requests the Government made to LabCorp during its investigation, Plaintiffs cannot assess whether LabCorp has complied with its obligation to properly respond to Plaintiffs' RFPs, and they cannot ensure that they have identified all deficiencies in LabCorp's Reproduction. LabCorp's refusal to provide compliant RFP responses conceals the extent of the deficiencies in its production in this case.

Despite LabCorp's deficient RFP responses, Plaintiffs were able to identify some significant deficiencies during their review of LabCorp's Reproduction, including temporal and geographical gaps and an unexplained absence of documents related to known communications with third parties. LabCorp has failed to even acknowledge Plaintiffs' repeated requests to provide a supplemental production to cure these deficiencies, instead mischaracterizing Plaintiffs' position as requesting a wholly new document review and production. Plaintiffs have never made such a request. Rather, LabCorp's refusal to address the specific deficiencies Plaintiffs have identified in the Reproduction to the Government has forced Plaintiffs to move to compel LabCorp to supplement its production to address the deficiencies Plaintiffs have identified.

LabCorp is in exclusive possession of (a) the information necessary to provide Rule 34-compliant RFP responses; and (b) the specific documents Plaintiffs have requested. Requiring LabCorp to take the modest steps of amending its RFP responses and providing a supplemental production is proportional to the needs of this *qui tam* case, which alleges LabCorp's knowing participation in a massive kickback scheme to defraud the United States with potential damages in the hundreds of millions of dollars. Plaintiffs thus request that the Court compel LabCorp to (1) provide Rule 34-compliant RFP responses, and (2) supplement its current production to cure the specific deficiencies Plaintiffs have identified thus far.

**Second**, LabCorp refuses to provide basic email custodian discovery as required by the ESI Protocol that was agreed to by the Parties on October 14, 2019 and ordered by the Court on December 18, 2019. (*See infra* Part III.D.) Pursuant to that agreement and the Court's order, Plaintiffs served specific email discovery interrogatories seeking the identities of custodians most likely to have relevant information on four key issues in the case. But LabCorp has refused to identify the relevant custodians, or even to confirm the accuracy of the list of potential custodians Plaintiffs identified after painstaking document review. Instead, LabCorp gave Plaintiffs a spreadsheet listing ***more than 20,000*** LabCorp employees and left Plaintiffs to guess which ones would be worth further targeted discovery requests. That is not a good-faith response to Plaintiffs' email interrogatories, which seek information that is essential to ensuring the efficient progress of email discovery, assessing the completeness of LabCorp's existing document production, and identifying potential deponents. LabCorp's failure to properly respond prejudices Plaintiffs' ability to narrowly tailor their requests for supplemental document production to the most relevant custodians and issues. Plaintiffs thus request that the Court compel LabCorp to provide full and complete responses to LabCorp's email interrogatories.

**Third,** LabCorp refuses to respond to Plaintiffs' compromise proposal that the Parties not include certain privileged communications that occurred after January 1, 2015 on their privilege logs. (*See infra* Part III.E.)  Imposing a reasonable cutoff date for privilege logging will reduce the respective discovery burdens on both Parties while preserving their ability to compel production of documents that have been improperly withheld under certain claims of privilege. However, as explained in detail below, LabCorp's proposed cutoff date—February 4, 2013— would permit it to exclude from its privilege logs communications concerning important documents for which the Parties have an apparent dispute over the applicability of the privilege. LabCorp's proposed cutoff date would therefore prevent Plaintiffs from challenging these privilege designations through the privilege log process.  Plaintiffs thus request that the Court order: (1) that the Parties do not have to include in their privilege logs communications after January 1, 2015 that are privileged communications between (a) counsel and their clients, and (b) counsel and the Government; and (2) that LabCorp provide an amended privilege log that includes all documents LabCorp has withheld as privileged that were created on or before January 1, 2015.

Over the past several months, the Parties have met and conferred *ad nauseum* regarding each of these issues, but LabCorp has still declined to comply with its basic obligations under both the Federal Rules of Civil Procedure and the Court's ESI Protocol.  Plaintiffs will be prejudiced unless LabCorp cures these deficiencies because additional discovery efforts, including upcoming depositions, are dependent upon the completeness of LabCorp's responses to these requests. Because the Parties have reached an impasse on all issues presented in this Motion, Plaintiffs ask the Court for relief.[1]

---

[1] During their meet and confer discussions regarding LabCorp's RFP responses, the Parties agreed to toll the deadline to move to compel under Local Civil Rule 37.01 (D.S.C.).  (Ex. AA, Plaintiffs' Dec. 9, 2019 Email.)  With respect to email discovery, LabCorp has consistently taken

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In this *qui tam* action, Plaintiffs allege that LabCorp violated the False Claims Act ("FCA") and Anti-Kickback Statute ("AKS") by participating in two types of conduct resulting in the submission of false claims to Government healthcare programs.  (*See* ECF No. 50, Plaintiffs' Fourth Amended Complaint.)  First, LabCorp participated in an illegal kickback scheme with two other labs, Health Diagnostic Laboratory ("HDL") and Singulex, Inc. ("Singulex").  Plaintiffs contend that LabCorp provided blood specimen collection services (blood draws) for tests referred by physicians to HDL and Singulex, despite knowing that HDL and Singulex were paying illegal inducements couched as "processing and handling fees" to referring physicians.  In other words, LabCorp performed the blood draws and created the blood sample to be referred to HDL and Singulex, which triggered the payment of the kickback to the referring physician and enabled HDL and Singulex to submit false claims to the Government.

Second, LabCorp's own claims submitted to the Government were fraudulent and false.  LabCorp performed the HDL and Singulex blood specimen collection services for its physician customers in order to gain or maintain referrals of other tests from those customers.  LabCorp submitted its own false claims for those tests, tainted by illegal kickbacks, to the Government.

### A.  During the Government's Investigation, LabCorp Negotiated Limitations on the Scope of its Document Production.

Plaintiffs filed their Original Complaint in February 2013.  The Government then opened an investigation into the conduct of HDL, Singulex, and LabCorp.  According to documents

---

the position that this issue is entwined in its arguments regarding its RFP responses, (Ex. Q, LabCorp's Dec. 23, 2019 Letter; Ex. C, LabCorp's Jan. 22, 2020 Letter; Ex. T, LabCorp's March 6, 2020 Letter; Ex. J, LabCorp's April 13, 2020 Email), so the Parties agreed to toll the deadline on that issue as well.  As for the Parties' privilege log dispute, LabCorp informed Plaintiffs that this issue should be raised with the Court via email on April 29, 2020, (Ex. BB, LabCorp's April 29, 2020 Email), so the Local Civil Rule 37.01 motion to compel deadline has not yet passed.

LabCorp has produced thus far, LabCorp received notice of the Government's investigation sometime in May 2013, and the Government thereafter made some informal requests for information to LabCorp. The Government then served LabCorp with a subpoena ███████ ████ and a Civil Investigative Demand ("CID") ███████████ . (*See* Ex. A, Government's Subpoena; Ex. B, Government's CID.)

In responding to the Government's document requests, LabCorp negotiated at least the following limitations, which significantly limited the scope of its production:

- Although LabCorp has tens of thousands of employees, LabCorp limited its production to 81 custodians at the Government's request. (Ex. C, LabCorp's Jan. 22, 2020 Letter, at Ex. A (listing custodians).)

- LabCorp and the Government agreed on a list of search terms that were used to narrow and filter the collection of documents for production. (Ex. C, LabCorp's Jan. 22, 2020 Letter, at Ex. B (listing search terms).)

- At LabCorp's request, several search terms were limited to documents from only one of LabCorp's six geographic divisions. (Ex. C, LabCorp's Jan. 22, 2020 Letter, at Ex. B (indicating division name parenthetically for limited search terms).)

-  (Ex. B, Government's CID; Ex. A, Government's Subpoena.)

The Government, not Plaintiffs, negotiated with LabCorp regarding these parameters, (Ex. D, Declaration of Pamela Coyle Brecht ("Brecht Decl.") ¶ 3), because pursuant to the FCA, the Government, not Plaintiffs, conducts the investigation while a qui team complaint is under seal. 31 U.S.C. § 3730(a), (b). Plaintiffs had no authority to reject any of LabCorp's proposed limitations. (Ex. D, Brecht Decl. ¶ 3.)

The Government concluded its investigation and declined to intervene in this case in April 2018. (ECF No. 30.) At that point, Plaintiffs' Complaint was unsealed, and for the first time, Plaintiffs had the authority to request information directly from LabCorp during discovery. *See*

31 U.S.C. § 3730(c)(3).  However, the Government will receive at least 70 percent of any recovery

obtained by Plaintiffs.  *See id.* § 3730(d)(2).  Plaintiffs filed their Fourth Amended Complaint in

June 2018.  (ECF No. 50.)  Following disposition of LabCorp's Motion to Dismiss, LabCorp

answered, and the Parties are now engaged in discovery pursuant to the Court's Amended

Scheduling Order.

### B. LabCorp Has Refused to Comply with Plaintiffs' Requests for Production.

Plaintiffs served their First RFPs on LabCorp on October 22, 2019.  (*See* Ex. E, Plaintiffs'

First RFPs.)  LabCorp responded, "object[ing] to any large-scale requests from Plaintiffs for

electronically stored information or other documents" because it had produced documents to the

Government during the investigation.  (Ex. F, LabCorp's Responses to Plaintiffs' First RFPs.)

LabCorp agreed only to "re-produce" the same documents to Plaintiffs, but claimed that it was

"willing to meet and confer with Plaintiffs regarding any additional specific remaining requests

Plaintiffs have[.]"  (Ex. F, LabCorp's Responses to Plaintiffs' First RFPs.)

Significantly, except with respect to Request No. 1, which requested all documents

LabCorp had produced to the Government, LabCorp's Responses to Plaintiffs' RFPs did not even

state whether LabCorp was producing documents responsive to "each item or category" in

Plaintiffs' RFPs, or "whether any responsive materials [were] being withheld on the basis of"

LabCorp's objections.  Fed. R. Civ. P. 34(b)(2)(B), (C).  (*See* Ex. F, LabCorp's Responses to

Plaintiffs' First RFPs.)

After receiving LabCorp's deficient RFP responses, Plaintiffs requested to meet and

confer. During the conference, Plaintiffs reminded LabCorp of its obligation under Rule 34 to state

whether it had produced responsive documents with respect to each of Plaintiffs' RFPs.  (Ex. D,

Brecht Decl. ¶ 4.)  LabCorp declined to do so, asserting that it had determined that Plaintiffs' RFPs

were duplicative of the Government's CID and that it therefore had no obligation to perform any additional review.  (Ex. D, Brecht Decl. ¶ 4.)

Soon thereafter, LabCorp requested that Plaintiffs review LabCorp's Reproduction of the materials it produced to the Government prior to moving to compel Rule 34-compliant RFP responses or the supplemental production of specific categories of documents Plaintiffs believed were missing from LabCorp's Reproduction.  (Ex. G, LabCorp's Dec. 19, 2019 Letter.)  Plaintiffs agreed.  (Ex. H, Plaintiffs' Dec. 23, 2019 Email.)  Plaintiffs complied with that request in good faith, and over the next three months spent significant time and resources reviewing LabCorp's Reproduction.  (Ex. D, Brecht Decl. ¶ 5.)  But despite LabCorp's insistence that its Reproduction was fully responsive to Plaintiffs' October 2019 RFPs, Plaintiffs' review identified several significant deficiencies, four specific examples of which Plaintiffs identified to LabCorp on April 1, 2020: (1) temporal gaps for many custodians; (2) geographical gaps, with the produced documents heavily weighted toward LabCorp's Atlantic Division; (3) a lack of documents related to known meetings and communications between LabCorp executives and HDL or Singulex, many of which are referenced in Plaintiffs' Complaint; and (4) a lack of accurate metadata for many documents.  (Ex. I, Plaintiffs' April 1, 2020 Letter.)  Plaintiffs asked LabCorp to address these deficiencies, and again requested (for the third time) that LabCorp provide RFP responses that complied with its obligations under Rule 34.  (*Id*.)

LabCorp did not substantively respond to Plaintiffs on these issues, thus forcing Plaintiffs to again request (for the fourth time) that LabCorp provide Rule 34-compliant RFP responses.  (Ex. D, Brecht Decl. ¶ 7.)  LabCorp declined, but finally agreed on April 10, 2020 (after more than three months of meet-and-confer) to produce its correspondence with the Government regarding the parameters of its prior production to the Government.  (Ex. D, Brecht Decl. ¶ 7.)  LabCorp also

said (as it had stated at the beginning of the meet-and-confer process more than three months earlier) that it was willing to consider additional specific document requests, but wholly ignored the specific examples of known deficiencies in LabCorp's Reproduction that Plaintiffs had already identified in their April 1, 2020 letter.  (Ex. D, Brecht Decl. ¶ 7.)

After an extensive series of further meet and confers, Plaintiffs advised LabCorp that they believed it would be necessary to seek relief from the Court.  (Ex. J, LabCorp's April 13, 2020 Email; Ex. K, Plaintiffs' April 15, 2020 Email; Ex. L, LabCorp's April 17, 2020 Email; Ex. M, Plaintiffs' April 21, 2020 Email.)  The following day, ostensibly to discourage Plaintiffs from filing a motion to compel, LabCorp agreed to amend its responses to Plaintiffs' RFPs.  (Ex. N, LabCorp's April 22, 2020 Email.)

LabCorp's amended responses to Plaintiffs' RFPs, however, merely expanded LabCorp's response to Request No. 1 to state that LabCorp believes its prior production is "fully responsive" to Plaintiffs' RFPs because the RFPs are "substantially identical" to the Government's CID.  (Ex. O, LabCorp's Supplemental Responses to Plaintiffs' RFPs.) LabCorp's amended responses to Plaintiffs' 82 other RFPs did not address any of Plaintiffs' concerns, instead continuing to offer only boilerplate objections and nonspecific assertions of privilege without specifying whether or on what grounds LabCorp has withheld documents responsive to any particular request.  These responses do not satisfy LabCorp's obligations under Rule 34, and they leave Plaintiffs unable to determine whether there are deficiencies in LabCorp's Reproduction beyond those Plaintiffs have already identified.

To date, LabCorp has not produced any documents beyond the same set of documents it produced to the Government and the communications it exchanged with the Government during the investigation.  LabCorp has repeatedly ignored the specific examples Plaintiffs have provided

of the significant deficiencies in that production. LabCorp must provide amended Rule 34-compliant responses to its RFPs, as well as a supplemental production that addresses the deficiencies that Plaintiffs have already identified in LabCorp's current production.

**C. LabCorp Has Failed to Properly Respond to Plaintiffs' Email Discovery Interrogatories.**

The ESI Protocol, which was agreed to by the Parties and thereafter ordered by the Court, requires "a specific identification by each party of the most relevant listed e-mail custodians in view of the pleaded claims and defenses." (ECF No. 97.) In addition, "[e]ach requesting party may also propound up to 5 written discovery requests and take 1 deposition per producing party to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests." (*Id.*)

Pursuant to the ESI Protocol, Plaintiffs served their request for LabCorp's "specific identification . . . of the most relevant listed e-mail custodians" and five email discovery interrogatories on December 2, 2019, which included the following interrogatories:

(1) Please identify whether the following individuals are current or former LabCorp employees, all titles these individuals held while employed at LabCorp, and the dates of employment during which they held each title you have identified: [listing employees.]

(2) Please identify all LabCorp employees that would have communicated about, whether internally among LabCorp employees or agents or externally with insurers or other third parties, handled, had contact with, or analyzed leakage reports[2] (as defined in Paragraph 23 of Relator's First Requests for Production of Documents to LabCorp) between January 1, 2009, and December 31, 2014.

(3) Please identify all LabCorp employees that would have been involved in (a) LabCorp's decision to submit, or (b) the actual submission of, requests for OIG fraud alerts or

---

[2] "Leakage reports" are reports LabCorp received from insurers or circulated internally that tracked LabCorp's physician customers' referrals to HDL and Singulex, which were out-of-network labs for most insurance companies. They are highly relevant to LabCorp's knowledge of HDL and Singulex's illicit kickback scheme.

similar reports related to phlebotomy services between January 1, 2009, and December 31, 2014.

(4) Please identify all LabCorp employees that have communicated, whether in-person, over the telephone, or through written correspondence, with HDL, Singulex, or BlueWave (as those entities are defined in paragraphs 17, 18, and 19 of Relator's First Requests for Production of Documents to LabCorp), through any of their founders, employees, or contractors, including but not limited to HDL's Tonya Mallory, Russ Warnick, or Douglas Sbertoli; Singulex's Philippe Goix or Gary Tom; or BlueWave's Brad Johnson, Cal Dent, Tony Carnaggio, or Jeffrey "Boomer" Cornwell, related to phlebotomy services or LabCorp's business relationship with HDL or Singulex.

(5) Please identify all LabCorp employees responsible for making, implementing, or enforcing compliance rules, policies, and procedures related to the phlebotomy services performed by LabCorp employees or agents, the payment or collection of draw fees or processing and handling fees, and the circumstances under which a LabCorp phlebotomist may draw blood for a test to be performed by a lab other than LabCorp.

(Ex. P, Plaintiffs' Dec. 2, 2019 Letter.)

LabCorp responded, noting that it generally "object[ed] to any large scale additional requests for ESI, custodial data, or other documents" and asserting a litany of other objections. (Ex. Q, LabCorp's Dec. 23, 2019 Letter.)  In addition, LabCorp produced a spreadsheet containing information about the employees identified in Interrogatory No. 1, as well as a second spreadsheet listing more than 20,000 LabCorp employees that purported to respond to Interrogatory No. 5. (*See* Ex. Q, LabCorp's Dec. 23, 2019 Letter.)  LabCorp refused to respond further, instead referring Plaintiffs generally to the more than 460,000 pages of LabCorp's Reproduction.  (*Id.*)

Plaintiffs requested supplemental responses to their email interrogatories and again asked LabCorp for its list of the "most relevant listed e-mail custodians."  (Ex. R, Plaintiffs' Jan. 2, 2020 Email.)  LabCorp thereafter identified those individuals by producing the same list of custodians it had years ago negotiated with the Government, as well as the search terms it had used in that production.  (Ex. C, LabCorp's Jan. 22, 2020 Letter, at Ex. A, B.)  For Interrogatories No. 2, 4, and 5, LabCorp also provided Bates numbers of documents containing responsive information. (*Id.*)

11

Using the documents LabCorp identified, Plaintiffs compiled their own list of the custodians they believed were most likely to have documents responsive to Interrogatories No. 2, 4, and 5. (Ex. S, Plaintiffs' Feb. 18, 2020 Letter.) Plaintiffs requested that LabCorp confirm that Plaintiffs' list captured the LabCorp custodians responsive to these Interrogatories. Plaintiffs also requested that LabCorp provide a list of custodians responsive to Interrogatory No. 3, for which it had not identified any responsive documents. (Ex. S, Plaintiffs' Feb. 18, 2020 Letter.) But LabCorp refused even to confirm the accuracy of the proposed custodian lists Plaintiffs had provided, instead restating its position that the Court-ordered ESI Protocol was "largely irrelevant" and that "large scale additional requests for ESI" were not appropriate. (Ex. T, LabCorp's March 6, 2020 Letter.)

After numerous additional correspondence with LabCorp related to its deficient Interrogatory responses, Plaintiffs have been unable to obtain compliant responses.

**D. LabCorp Has Refused to Respond to Plaintiffs' Proposed Cutoff Date for Privilege Logging.**

On December 30, 2019, Plaintiffs proposed that the Parties agree that attorney-client communications made after April 4, 2018—the date that the case was unsealed—need not be recorded on the Parties' respective privilege logs. (Ex. U, Plaintiffs' Dec. 30, 2019 Email.) In response, LabCorp proposed February 6, 2013—the date that Plaintiffs filed their Original Complaint—as the cutoff for privilege logging. (Ex. V, LabCorp's Jan. 6, 2020 Email.) LabCorp thereafter produced its privilege logs from the Government's investigation.

Over the next two months, the Parties tabled their discussion regarding a cutoff date while they exchanged correspondence about deficiencies in LabCorp's privilege logs, including that LabCorp withheld communications related to its submission of requests for Special Fraud Alerts to the Office of the Inspector General of the U.S. Department of Health and Human Services

("OIG").  Eventually, LabCorp agreed to amend its privilege logs to address the issues Plaintiffs raised.  (Ex. N, LabCorp's April 22, 2020 Email.)

Plaintiffs thereafter suggested, as a compromise between Plaintiffs' proposed cutoff of the 2018 unsealing date and LabCorp's proposal of the 2013 date of Plaintiffs' Original Complaint, that privileged communications after January 1, 2015 between (1) counsel and their respective clients, and (2) counsel and the Government need not be logged.  (Ex. W, Plaintiffs' April 29, 2020 Email.)  Plaintiffs identified this date as a reasonable and appropriate cutoff date because, as explained above, Plaintiffs dispute LabCorp's position that its communications related to its submission of requests for Special Fraud Alerts (which took place in 2013 and 2014) are privileged, and Plaintiffs seek to preserve their ability to challenge those privilege designations. (Ex. X, Plaintiffs' March 9, 2020 Letter (challenging privilege designation); Ex. Y, LabCorp's Feb. 21, 2020 Letter (arguing in favor of privilege).)

## II.    LEGAL STANDARD

Rule 26(b)(1) permits discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  The party seeking discovery may move for an order compelling disclosure, response, or production when another party has failed to comply with its discovery obligations.  Fed. R. Civ. P. 37(a)(3)(A), (B). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  The party resisting discovery has the burden of

demonstrating that the information requested is outside the scope of Rule 26(b)(1). *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 529 (D.S.C. 2018).

## III.    ARGUMENT

### A. LabCorp Must Provide Rule 34-Compliant RFP Responses.

LabCorp's amended RFP responses are deficient because they fail to comply with Rule 34's requirements to: (1) state whether LabCorp produced documents responsive to each RFP; (2) state with specificity LabCorp's grounds for objecting to each RFP; and (3) state whether LabCorp has withheld documents responsive to each RFP on the basis of its objections. Without this information, Plaintiffs cannot fully assess the sufficiency of LabCorp's current document production and identify any further specific deficiencies in that production. The Court should therefore compel LabCorp to provide appropriate RFP responses.

A party responding to RFPs under Rule 34 must, "[f]or each item or category," either state that inspection will be permitted or production will occur, or state with specificity the grounds for objecting to the request. Fed. R. Civ. P. 34(b)(2)(B). In addition, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). "Parties are prohibited from assert[ing] conclusory, boilerplate objections that fail to explain the precise grounds that make the request objectionable." *United States v. Town of Irmo*, No. 3:18-CV-03106-JMC, 2020 WL 1025686, at *5 (D.S.C. Mar. 3, 2020) (internal quotation marks and citation omitted).

LabCorp's amended responses to Plaintiffs' RFPs do not meet these standards. In response to Plaintiffs' Request No. 1, which requests the documents produced by LabCorp during the Government's investigation, LabCorp asserts that its production to the Government is "fully responsive" to Plaintiffs' RFPs because the RFPs are "substantially identical" to the Government's CID. (Ex. O, LabCorp's Supplemental Responses to Plaintiffs' RFPs.) LabCorp's responses to

14

Requests No. 2 through 83 incorporate by reference its response to Request No. 1 and recite boilerplate objections—for example, that the Request is "overbroad" or "seeks disclosure of . . . commercially sensitive information"— without explaining their basis. (*Id.*) LabCorp does not state: (1) which of Plaintiffs' RFPs the documents in LabCorp's Reproduction are responsive to; (2) the specific grounds for its objections; or (3) whether responsive materials are being withheld on the basis of LabCorp's objections. *Cf.* Fed. R. Civ. P. 34(b)(2)(B), (C).

To be clear, Plaintiffs have not requested that LabCorp do a wholesale new document collection, review, and production in response to Plaintiffs' RFPs. But Plaintiffs cannot assess whether LabCorp has adequately responded to their RFPs when LabCorp refuses to provide any information specifying which RFPs it believes it has responded to, and which RFPs it has declined to respond to based on a claim of privilege or other objections. Furthermore, Plaintiffs cannot ensure that they have identified all the gaps in LabCorp's current document production without Rule 34-compliant RFP responses.

For this reason, there is nothing unduly burdensome or disproportionate about the narrowly tailored relief Plaintiffs are requesting here, and the Court should compel LabCorp to promptly provide Rule 34-compliant RFP responses.

1. *Contrary to LabCorp's contentions, Plaintiffs' RFPs are not identical to the Government's CID, illustrating the need for Rule 34-compliant RFP responses and appropriate supplemental productions.*

The fact that Plaintiffs' RFPs are in many ways different from the Government's CID further illustrates the need for Rule 34-compliant RFP responses in this case. By its own account, in responding to Plaintiffs' RFPs, LabCorp merely compared Plaintiffs' RFPs to the Government's ████████ CID, determined that the requests were "substantially identical," and refused to make any effort to provide Rule-34 compliant RFP responses or make any supplemental production. Setting aside the fact that Plaintiffs have the same rights to discovery under the rules

as any other litigant, any similarity between Plaintiffs' RFPs and the Government's investigative CID does not relieve LabCorp of its discovery obligations in the litigation—including providing Rule 34-compliant RFP responses. *See United States v. Boston Sci. Corp.*, No. 11-cv-2453, 2020 WL 968218, at *8 n.8 (D. Minn. Feb. 28, 2020) ("Boston Scientific's reliance on production of 30,000 documents is misplaced as these were documents already gathered by Boston Scientific for response to the government's investigation."). In any event, LabCorp is simply incorrect to assert that Plaintiffs' RFPs merely duplicate the Government's ███ CID, or that its Reproduction of the investigative documents satisfies its discovery obligations.

First, Plaintiffs' RFPs include several requests not made in the Government's CID, ████



(*Compare* Ex. E, Plaintiffs' First RFPs, *with* Ex. B, Government's CID.) Although it appears from Plaintiffs' review of LabCorp's Reproduction that LabCorp has not produced these highly relevant materials, Plaintiffs cannot confirm this deficiency because LabCorp refuses to state in Rule 34-compliant RFP responses whether it has withheld the requested documents (or whether they do not exist).

In addition, Plaintiffs' RFPs include a number of requests that are broader than those in the Government's CID, including the following examples:

| Government's CID Request[3] | Plaintiffs' RFP[4] |
|---|---|
| ████████████ | RFP No. 42: **All** documents regarding reports to LabCorp related to blood draws performed for courtesy draws (whether performed for free or at reduced cost) or to remuneration paid to or received |

---

[3] *See* Ex. B, Government's CID.
[4] *See* Ex. E, Plaintiffs' First RFPs.

16

| Government's CID Request[3] | Plaintiffs' RFP[4] |
|---|---|
|  | by physicians for referrals to HDL or Singulex, whether made to LabCorp's HOTLINE, 800-801-1005, LabCorp's Compliance Department, **or through any other means**, including, but not limited to, email, text message, in-person, over the telephone, or otherwise.<br><br>**Relevance and Difference in Scope:**<br>The reports sought by Plaintiffs are relevant to LabCorp's knowledge of HDL and Singulex's payment of remuneration to physicians and also to LabCorp's knowledge of its own phlebotomists' participation in the scheme by drawing blood for HDL and Singulex lab tests, which is an essential element of Plaintiffs' FCA and AKS claims. *See* 31 U.S.C. § 3729; 42 U.S.C. § 13207b(b). |
| | <u>RFP No. 68:</u>  All documents related to any method used by LabCorp **to track referrals** to LabCorp or other labs by a physician practice, either electronically or on paper, whether through a patient log, manifest, or other method.<br><br><u>RFP No. 69:</u> All documents related to any method used by LabCorp **to track referrals** to LabCorp or other labs by Dr. Miller's practice, either electronically or on paper, whether through a patient log, manifest, or other methods.<br><br>**Relevance and Difference in Scope:**<br>The extent to which LabCorp was tracking individual referrals is relevant to LabCorp's knowledge of *each* false claim that was submitted to a Government healthcare program. |

17

In sum, Plaintiffs' RFPs differ materially from the Government's CID requests.  This emphasizes the need for Rule 34-compliant RFP responses and demonstrates that LabCorp's attempt to limit its production to the same documents it previously produced to the Government is insufficient and improper.

2. *LabCorp's limitations on its production to the Government further illustrate the need for Rule 34-compliant RFP responses.*

During the Government's sealed investigation, LabCorp negotiated a series of limitations on the scope of its production to the Government that do not reflect the needs and proper scope of discovery in this litigation.  For example, LabCorp and the Government narrowed the production based on particular custodians requested by the Government and, for some search terms, geographic restrictions proposed by LabCorp.  (Ex. C, LabCorp's Jan. 22, 2020 Letter, at Ex. A (listing custodians), Ex. B (indicating division name parenthetically for limited search terms).) Geographic restrictions on the scope of the production are inappropriate, especially given that Plaintiffs' well-pleaded complaint alleges a nationwide scheme directed from the highest level of LabCorp's executive leadership.  And given LabCorp's thousands of employees and the national scope of Plaintiffs' allegations, there are likely additional relevant custodians beyond the approximately 80 identified by the Government.   For example, the custodian list for the Government's investigation does not include Eric Lindblom, LabCorp's former Senior Vice President of Corporate Finance, who was involved in high-level communications and meetings between LabCorp and HDL; Randy Simmons, another former LabCorp Senior Vice President who approved the placement of in-office phlebotomists for physicians who referred to HDL and Singulex; or Lisa Hoffman Starr, LabCorp's former Senior Vice President of Human Resources, who was involved in LabCorp's due diligence and acquisition discussions related to HDL.

Put simply, LabCorp's refusal to produce compliant RFP responses is concealing gaps in its production through its boilerplate RFP responses—gaps that LabCorp knows exist because LabCorp negotiated limitations on its production to the Government and is aware that the Government's requests were narrower than Plaintiffs' RFPs. LabCorp should disclose those gaps to Plaintiffs by providing the Rule 34-compliant RFP responses to which Plaintiffs are entitled.

### B. LabCorp Must Promptly Cure the Specific Deficiencies Plaintiffs Have Identified.

Plaintiffs, from the beginning, have clearly communicated to LabCorp that they would accept, as a partial response to their RFPs, the documents that LabCorp provided to the Government during the sealed investigation. In fact, Plaintiffs' RFP No. 1 specifically asked LabCorp to simply send to the Plaintiffs a Reproduction of documents that LabCorp produced to the Government. Plaintiffs knew there was a production to the Government during the sealed investigation because Plaintiffs' counsel reviewed it for the Government. The remaining RFPs are Plaintiffs' focused requests for documents to supplement LabCorp's production, to the extent that the documents are not already produced in response to RFP No. 1. Thus, Plaintiffs have been reasonable from the start of the discovery process and have clearly communicated to LabCorp that they seek a supplemental production. Further, Plaintiffs have provided examples of known deficiencies in LabCorp's reproduction of what produced to the Government to illustrate that LabCorp's supplemental production is needed.

Despite LabCorp's repeated assurance that it is willing to consider additional "targeted" or "tailored" document requests from Plaintiffs, LabCorp has chosen to wholly ignore Plaintiffs' repeated requests that LabCorp cure specifically identified deficiencies in its production. (Ex. G, LabCorp's Dec. 19, 2019 Letter; Ex. T, LabCorp's March 6, 2020 Letter; Ex. J, LabCorp's April 13, 2020 Email; Ex. K, LabCorp's April 17, 2020 Email.) Plaintiffs therefore respectfully request

that the Court compel LabCorp to cure the document production deficiencies that Plaintiffs have identified, as set forth below.

Specifically, despite the limitations on Plaintiffs' ability to know what responsive information LabCorp has not produced in response to Plaintiffs' RFPs, Plaintiffs have provided a non-exhaustive list of apparent deficiencies in LabCorp's production based on their review of that production, including:

(1) **Temporal gaps for key custodians.**  Many custodians have weeks, months, or years-long gaps in their production.  Plaintiffs offered the following as non-exhaustive examples of such gaps:

- **Joan Atkins (Divisional Compliance Officer):**
  o December 2012 – March 2013.

- **Anil Asnani (Vice President of Strategic Planning and Corporate Development):**
  o June 2010 – July 2011 (including the 12 months leading up to his meeting in May 2011 with Tonya Mallory, founder and CEO of now-defunct HDL);
  o July 2012 – August 2013;
  o October 2013 – February 2014.

- **Traci Butler (Senior Vice President):**
  o February 2011 – May 2012;
  o February 2013 – July 2013.

- **Dave King (Chief Executive Officer):**
  o September 2009 – March 2012 (even though King asked for information about Singulex in August 2009 and LabCorp held high-level meetings with the founders of HDL in May 2011, and LabCorp began doing business with HDL and Singulex during this period);
  o October 2012 – July 2013 (during which LabCorp made its first request for an OIG fraud alert and there were likely internal communications with King leading to his August 2013 meeting with Tonya Mallory).

- **Ben Miller (Executive Vice President and Chief Operating Officer):**
  o April 2012 – October 2012 (Miller's production is limited to 385 documents between July 2010 and December 29, 2014, even though he was personally involved in meetings with executives from HDL in May 2011 and March 2013 and was also charged with creating the agenda for a high-level meeting between King

and Mallory that was scheduled to occur in November 2013, but may have been canceled at the last minute.)

Each of these custodians was among those that LabCorp agreed to with the Government. (Ex. C, LabCorp's Jan. 22, 2020 Letter, at Ex. A.) Yet LabCorp has neither (1) disputed that these temporal gaps in the production exist, nor (2) assured Plaintiffs that they have produced all responsive, non-privileged documents from these custodians created during these temporal gaps.

(2) **Geographical gaps.** Because Plaintiffs' Complaint alleges nationwide participation in HDL and Singulex's fraudulent scheme throughout all six of LabCorp's divisions, documents from all six divisions are relevant to Plaintiffs' claims. (ECF No. 50, Plaintiffs' Complaint.) But LabCorp's current document production is heavily weighted to LabCorp's Atlantic Division, with a paucity of documents from the other five divisions within LabCorp. For example, 95% of the leakage reports produced are only for the Atlantic Division. (Ex. D, Brecht Decl. ¶ 6.) This geographic limitation on LabCorp's production to the Government during the investigation impacts all LabCorp custodians within the underrepresented divisions (and related states) and makes it impossible for Plaintiffs to identify the gaps in custodians or by subject.

As with the temporal gaps, LabCorp has not denied the geographic limits Plaintiffs have identified in its current production or in any way assured Plaintiffs that the Reproduction was derived from a search for non-privileged documents responsive to Plaintiffs' RFPs from all LabCorp's regions.[5]

(3) **Missing documents and communications related to known meetings and telephone calls between LabCorp and HDL or Singulex executives, some of which are described in Plaintiffs' Complaint.** Plaintiffs raised the following specific categories of documents and

---

[5] Of course, it would be disingenuous for LabCorp to make any such assurance because it did not undertake an independent review of its documents in response to Plaintiffs' RFPs.

communications that appear to be missing from LabCorp's current production, deficiencies LabCorp has failed to address:

- The February 2013 non-disclosure agreement ("NDA") discussed by Ben Miller and Anil Asnani in advance of the March 1, 2013 meeting at LabCorp's headquarters between Ben Miller, Eric Lindblom, Latonya Mallory, and BlueWave founders Cal Dent and Brad Johnson.
- Documents and communications related to the May 2011 meeting between Anil Asnani and Tonya Mallory and Russ Warnick of HDL.
- Documents and communications related to the August 30, 2013 meeting at LabCorp's headquarters between HDL executives, including Latonya Mallory and LabCorp executives.
- Documents and communications related to the planned meeting between LabCorp executives and HDL to be held at HDL's Richmond, Virginia headquarters on November 21, 2013, later rescheduled to January 24, 2014.
- Documents and communications related to the March and April 2014 meeting(s) between LabCorp executives, HDL executives, and HDL's investment bankers.
- Telephone communications between LabCorp's executives David King, Ben Miller, and Anil Asnani and representatives of HDL or Singulex.

These documents and communications are responsive to Plaintiffs' RFPs No. 35, 36, 53, 54, 55, and 56, among others, all of which are relevant to Plaintiffs' conspiracy claim, and in particular to Plaintiffs' allegations that LabCorp pursued a possible acquisition of HDL, considered other business partnerships with HDL that it discussed with CEO Tonya Mallory and other HDL executives, and entered into agreements to perform laboratory testing on behalf of Singulex. (Ex. E, Plaintiffs' First RFPs; ECF No. 50, Plaintiffs' Complaint.) Again, LabCorp has not denied that these categories of documents are missing from its current production or in any way assured Plaintiffs that it has produced all documents and communications related to the above issues.

(4) **Inaccurate metadata.** LabCorp has failed to produce accurate metadata for the documents in its current production. For example, many of the documents for former CEO David King are PDFs (not native documents) with inaccurate "created" dates, such as July 25, 2014, well after the

Government's investigation began. Furthermore, many documents have inaccurate custodian data—*e.g.*, 612 of the documents in LabCorp's current production have the custodian removed and "HDLABINC" inserted in that data field. Plaintiffs raised several concerns with LabCorp's metadata, and LabCorp responded that it had reproduced these documents in the manner in which they were produced to the Government.

(5) **Missing documents regarding the "gentlemen's agreement" LabCorp entered into with other labs to decline to draw blood for HDL.** Documents produced thus far in the litigation indicate that LabCorp entered an informal "gentlemen's agreement" with other laboratories. Under this agreement, the laboratories would only draw blood for HDL and Singulex tests if they were drawing blood for their own tests (and thus receiving kickback-tainted referrals) during the same patient encounter. These documents are responsive to Plaintiffs' RFPs No. 35, 36, and 62, among others, and LabCorp has not disputed their relevance. (Ex. E, Plaintiffs' First RFPs; Ex. O, LabCorp's Supplemental Responses to Plaintiffs' RFPs.) Among other issues, these documents are relevant to LabCorp's knowledge of HDL and Singulex's fraudulent scheme and LabCorp's motivation for participating in the conspiracy by performing blood specimen collection services: to avoid losing business. LabCorp has offered no assurance to Plaintiffs that it has produced all responsive, non-privileged documents related to this "gentlemen's agreement," instead choosing to wholly ignore Plaintiffs' inquiries on this issue. (Ex. Z, Parties' Email Correspondence Regarding Metadata.)

(6) **Missing communications between LabCorp and Humana regarding leakage to HDL.** These communications are responsive to Plaintiffs' RFPs No. 67, 68, and 69, among others, and LabCorp has not disputed their relevance. (Ex. E, Plaintiffs' First RFPs; Ex. O, LabCorp's Supplemental Responses to Plaintiffs' RFPs.) LabCorp's communications with Humana

23

regarding leakage are relevant to LabCorp's knowledge of its phlebotomists' blood draws for HDL and Singulex tests and the LabCorp physician customers for whom these services were being performed. Although Plaintiffs have not previously raised this deficiency with LabCorp, they have no reason to believe that LabCorp would acknowledge or respond to it given LabCorp's refusal to acknowledge or respond to all of the other deficiencies. As a result, Plaintiffs include it here for the sake of efficiency.

Plaintiffs respectfully request that the Court order LabCorp to provide a supplemental production that cures the above-listed deficiencies.

### C. The Rule 26 Proportionality Factors Strongly Favor Plaintiffs.

Plaintiffs' narrowly tailored requests for relief are both reasonable and proportional to the needs of this case. Plaintiffs have alleged a nationwide scheme involving hundreds of millions of dollars in false claims submitted to Government healthcare programs, and Plaintiffs' requested discovery is directly relevant to proving the essential elements of their claims. In addition, because Plaintiffs are requesting documents and information in LabCorp's possession, custody, or control, LabCorp has exclusive access to that information. While it may be reasonable for LabCorp to seek to reduce its burden by relying in part on its prior production in response to the Government's CID, it is still obligated to make reasonable additional efforts to respond to Plaintiffs' RFPs.

LabCorp has taken on virtually no burden to date. It gave boilerplate answers to Plaintiffs' RFPs, added new Bates numbers to the documents it produced to the Government during the investigation, and sent those documents to Plaintiffs. The burden on LabCorp of providing proper Rule 34-compliant RFP responses and making a supplemental production does not outweigh the likely benefits to Plaintiffs—that is, the ability to adequately assess whether LabCorp has fully responded to their RFPs, narrowly draft additional targeted requests, and obtain the additional documents essential to proving their claims.

24

**D. LabCorp Must Adequately Respond to Plaintiffs' Email Discovery Interrogatories.**

LabCorp refuses to identify key email custodians as required by the ESI Protocol that was agreed by the Parties and ordered by the Court.  LabCorp's failure to do so impedes further targeted email discovery in this case.

The Parties' ESI Protocol permits Plaintiffs to "propound up to 5 written discovery requests . . . to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests."  (ECF No. 97.)  Plaintiffs accordingly propounded five email discovery interrogatories, seeking basic employment information about LabCorp employees Plaintiffs believed to be relevant custodians (Interrogatory No. 1), as well as the identities of other LabCorp employees likely to have discoverable information about four key issues in the case: (1) "leakage reports"—reports from insurers that tracked physicians' referrals to HDL and Singulex (Interrogatory No. 2); (2) LabCorp's submission of requests for Special Fraud Alerts to OIG (Interrogatory No. 3); (3) LabCorp's business relationship with HDL and Singulex (Interrogatory No. 4); and (4) LabCorp's compliance policies relating to non-LabCorp blood draws and the provision of fees for blood specimen collection services (Interrogatory No. 5).  (Ex. P, Plaintiffs' Dec. 2, 2019 Letter.)

Each of Plaintiffs' Interrogatories seeks relevant custodial information, as each bears on an issue identified in Plaintiffs' Complaint.  (*See* ECF No. 50.)  Specifically, leakage reports and LabCorp's compliance policies are relevant to LabCorp's knowledge of its physician customers who referred to HDL or Singulex, its phlebotomists' blood specimen collection services related to HDL and Singulex tests, and the illegality of that conduct.  LabCorp's submission of requests for OIG fraud alerts is relevant to LabCorp's knowledge that its co-conspirators HDL and Singulex were involved in a fraudulent scheme to pay physicians for blood specimen collection services, and also to LabCorp's defense that it acted as a whistleblower, not a participant, in HDL and

25

Singulex's scheme. (ECF No. 78, LabCorp's Answer.) And LabCorp's business relationship with HDL and Singulex is relevant to Plaintiffs' claim that LabCorp was benefitting commercially from its business dealings with HDL and Singulex, that these other smaller laboratories were not mere "competitors" of LabCorp, and that LabCorp was involved in a conspiracy related to referrals to HDL and Singulex.

However, LabCorp has repeatedly refused to provide the identities of the specific employees involved with the issues described in Interrogatories No. 2 through 5, aside from, perhaps, burying their identities in the spreadsheet of 20,000 employees it produced in response to Interrogatory No. 5. (Ex. Q, LabCorp's Dec. 23, 2019 Letter; Ex. C, LabCorp's Jan. 22, 2020 Letter; Ex. T, LabCorp's March 6, 2020 Letter.) Indeed, although LabCorp purported to answer Plaintiffs' Interrogatories No. 2, 4, and 5 when it provided the Bates numbers of responsive documents for those Interrogatories, LabCorp then refused to confirm the accuracy and completeness of the custodian lists Plaintiffs created based on the identified documents. (Ex. C, LabCorp's Jan. 22, 2020 Letter; Ex. T, LabCorp's March 6, 2020 Letter.) In addition, LabCorp has never identified **any** employees as responsive specifically to Interrogatory No. 3 (LabCorp's submission of requests for OIG fraud alerts), instead referring Plaintiffs to its Rule 26 initial disclosures and other lists of employees that do not designate which of the listed individuals have knowledge of the issue identified in that Interrogatory. (Ex. Q, LabCorp's Dec. 23, 2019 Letter; Ex. C, LabCorp's Jan. 22, 2020 Letter.)

Rather than provide the responses to Plaintiffs' email discovery Interrogatories as required under the agreed ESI Protocol and Rule 33, LabCorp reiterates its boilerplate objections that Plaintiffs' Interrogatories are "vague and overbroad." (Ex. Q, LabCorp's Dec. 23, 2019 Letter; Ex. C, LabCorp's Jan. 22, 2020 Letter; Ex. T, LabCorp's March 6, 2020 Letter.) *See Town of*

*Irmo*, 2020 WL 1025686, at \*5 ("Parties are prohibited from assert[ing] conclusory, boilerplate objections that fail to explain the precise grounds that make the request objectionable."). But LabCorp has manufactured this overbreadth issue by unreasonably construing Plaintiffs' Interrogatories as expansively as possible.

For example, LabCorp has twice insisted that Plaintiffs' Interrogatory No. 5—which asks for a targeted identification of the specific LabCorp employees "responsible for **making, implementing, or enforcing** compliance rules, policies, and procedures" related to phlebotomy services and blood specimen collection service fees—somehow encompasses "all LabCorp employees." (Ex. Q, LabCorp's Dec. 23, 2019 Letter; Ex. T, LabCorp's March 6, 2020 Letter.) This is because LabCorp rewrites Interrogatory No. 5 as requesting the identities of LabCorp employees "trained to monitor, self-enforce, and *comply with* LabCorp's compliance rules, policies, and procedures." (Ex. Q, LabCorp's Dec. 23, 2019 Letter; Ex. T, LabCorp's March 6, 2020 Letter.) Based on that willful misreading, LabCorp has responded to Plaintiffs' targeted interrogatory by producing a spreadsheet containing the names of ***more than 20,000*** LabCorp employees. (Ex. Q, LabCorp's Dec. 23, 2019 Letter, at Ex. B.) But as Plaintiffs have repeatedly explained to LabCorp (Ex. R, Plaintiffs' Jan. 2, 2020 Email; Ex. S, Plaintiffs' Feb. 18, 2020 Letter; Ex. I, Plaintiffs' April 1, 2020 Letter), Interrogatory No. 5 is plainly and unambiguously limited to the employees "responsible for making, implementing, and enforcing" those rules, not everyone required to comply, which is a vastly larger group than what Plaintiffs actually requested. LabCorp has refused to identify the specific employees that were responsible for making, implementing, and enforcing its compliance rules, policies, and procedures, instead leaving Plaintiffs to guess at

which persons on LabCorp's list of 20,000 employees might have filled this role.[6]  In no way is this massive list a good-faith response to Plaintiffs' interrogatories; it thwarts Plaintiffs' ability to streamline discovery by targeting key custodians for follow-up discovery requests and potential depositions.

LabCorp's refusal to identify relevant email custodians deprives Plaintiffs of the benefits of the ESI Protocol that was agreed by the Parties and ordered by the Court. (*See* ECF No. 97.) LabCorp is in the best position to determine which of its employees are email custodians with respect to relevant ESI, and LabCorp is obligated under Rules 26 and 33 to provide this information to Plaintiffs.  The Court should therefore compel LabCorp to respond to Plaintiffs' email discovery interrogatories with a list of custodians responsive to Plaintiffs' Interrogatories No. 2 through 5.

## E. LabCorp's Refusal to Respond to Plaintiffs' Proposal Regarding a Cutoff Date for Privilege Logging is Unreasonable.

The Parties agree that it is in their "best interest to reach an agreement on a cutoff date after which privileged communications with counsel no longer need to be recorded on a privilege log." (Ex. U, Plaintiffs' Dec. 30, 2019 Email; Ex. V, LabCorp's Jan. 6, 2020 Email.)  Indeed, reducing the number of documents included on the Parties' privilege logs by removing categories of undisputedly privileged documents will permit each Party to more efficiently review, evaluate,

---

[6] At the other extreme, even where LabCorp has read a limitation into Plaintiffs' Interrogatories—such as reading Interrogatory No. 3 as seeking only the identities of employees who "played a direct role in" the submission of OIG fraud alerts—LabCorp has still failed to provide the identities of even that more limited set of employees.  (Ex. Q, LabCorp's Dec. 23, 2019 Letter.)

and make any challenges to the opposing Party's assertions of privilege.  Imposing a cutoff date for privilege logging will therefore reduce both Parties' respective burdens related to discovery.

However, LabCorp refuses to agree—or even respond—to Plaintiffs' proposal related to a cutoff date for privilege logging.  Plaintiffs offered January 2015 as a compromise cutoff date between LabCorp's preferred date of February 2013 and Plaintiffs' prior proposal of April 2018. Under Plaintiffs' proposal, the Parties would not have to include in their privilege logs communications after January 1, 2015 that are privileged communications between (1) counsel and their clients, and (2) counsel and the Government.

"When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed[.]"  Fed. R. Civ. P. 26(b)(5)(A).  The party asserting the privilege has the burden to "identify the elements of the applicable privilege and demonstrate that each element is present for each document for which they claim the existence of a privilege."  *Machinery Sols.*, 323 F.R.D. at 538 (internal quotation marks and citation omitted); *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (party asserting attorney-client privilege must "establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived" (citation omitted)).

The compromise cutoff date, January 1, 2015, would narrow the Parties' privilege logs without depriving Plaintiffs of their ability to challenge LabCorp's existing claim of privilege on highly relevant documents. The Parties dispute whether LabCorp's communications with its attorneys related to its submission of requests for Special Fraud Alerts to OIG in 2013 and 2014— which LabCorp has alleged are evidence that it purportedly acted as a whistleblower regarding the

HDL and Singulex schemes to pay physicians for blood specimen collection services—are privileged. (Ex. X, Plaintiffs' March 9, 2020 Letter (challenging privilege designation); Ex. Y, LabCorp's Feb. 21, 2020 Letter (arguing in favor of privilege).) Plaintiffs believe that many, if not all, of the communications related to the Special Fraud Alerts are not likely to be privileged because they were made primarily for a business purpose—to report fraud by competitors to OIG—rather than for the purpose of obtaining legal advice to be disseminated among LabCorp's employees. (*See* Ex. X, Plaintiffs' March 9, 2020 Letter.) Indeed, LabCorp has agreed to reevaluate its privilege logs in light of this and other issues that Plaintiffs have raised. (Ex. N, LabCorp's April 22, 2020 Email.) Because LabCorp's fraud alert requests were made in February 2013 and February 2014, the disputed communications occurred at least in part after LabCorp's proposed cutoff date of February 6, 2013. Excluding entries concerning this timeframe from the privilege logs would deprive Plaintiffs of the opportunity to contest the privileged nature of these communications under the privilege log process set forth in the Federal Rules. Given the importance of this issue to the case, LabCorp should not be able to avoid litigating it by refusing to log the relevant documents.

As a result, LabCorp's failure to agree to Plaintiffs' compromise date of January 1, 2015—which is more than three years earlier than Plaintiffs' original proposed date of April 4, 2018—is unreasonable. Plaintiffs request that the Court: (1) order that the Parties do not have to include in their privilege logs communications after January 1, 2015 that are privileged communications between (a) counsel and their clients, and (b) counsel and the Government; and (2) order LabCorp

to provide an amended privilege log that includes all documents LabCorp has withheld as privileged that were created on or before January 1, 2015.

## IV.     CONCLUSION AND PRAYER FOR RELIEF

For the reasons described, LabCorp has failed to comply with its discovery obligations with respect to each of the issues set out in this Motion.  Plaintiffs respectfully request that the Court enter an order compelling LabCorp to: (1) provide (a) Rule 34-compliant responses to Plaintiffs' RFPs and (b) a supplemental production of documents curing the specific deficiencies identified above; and (2) appropriately respond to Plaintiffs' email discovery interrogatories. Furthermore, Plaintiffs request that the Court order: (1) that the Parties do not have to include in their privilege logs communications after January 1, 2015 that are privileged communications between (a) counsel and their clients, and (b) counsel and the Government; and (2) that LabCorp provide an amended privilege log that includes all documents LabCorp has withheld as privileged that were created on or before January 1, 2015.

Dated: May 19, 2020                    Respectfully submitted,

                                       /s/ Stacie C. Knight
                                       Stacie C. Knight
                                       (S.C. Bar No. 77968 & D.C. No. 10411)
                                       **WINSTON & STRAWN LLP**
                                       300 South Tryon Street, 16th Floor
                                       Charlotte, NC 28202
                                       (704) 350-7700
                                       (704) 350-7800 (fax)
                                       sknight@winston.com

                                       Thomas M. Melsheimer (Admitted *Pro Hac Vice*)
                                       Chad B. Walker (Admitted *Pro Hac Vice*)
                                       John Michael Gaddis (Admitted *Pro Hac Vice*)
                                       Katrina G. Eash (Admitted *Pro Hac Vice*)
                                       Bradley D. Ryynanen (Admitted *Pro Hac Vice*)
                                       **WINSTON & STRAWN LLP**
                                       2121 N. Pearl Street, Suite 900
                                       Dallas, TX 75201
                                       (214) 453-6500
                                       (214) 453-6400 (fax)
                                       tmelsheimer@winston.com
                                       cbwalker@winston.com
                                       mgaddis@winston.com
                                       keash@winston.com
                                       bryynanen@winston.com

                                       Marc S. Raspanti (Admitted *Pro Hac Vice*)
                                       Pamela Coyle Brecht (Admitted *Pro Hac Vice*)
                                       Douglas E. Roberts (Admitted *Pro Hac Vice*)
                                       **PIETRAGALLO GORDON ALFANO**
                                       **BOSICK & RASPANTI, LLP**
                                       1818 Market Street, Suite 3402
                                       Philadelphia, PA 19103
                                       Telephone: (215) 320-6200
                                       Facsimile: (215) 754-5191
                                       MSR@Pietragallo.com
                                       PCB@Pietragallo.com
                                       DER@Pietragallo.com

                                       *Attorneys for Plaintiffs/Relators*

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Plaintiffs met and conferred with counsel for Defendant LabCorp via email on May 15, 2020, and via telephone and email on numerous prior occasions, concerning the relief requested in this motion.  LabCorp is opposed and intends to file a response.

*/s/ Katrina G. Eash*
Katrina G. Eash


## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically and will be served on all counsel of record via CM/ECF on May 19, 2020.

*/s/ Stacie C. Knight*
Stacie C. Knight