**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| United States of America, *et al.*, *ex rel.* Scarlett Lutz and Kayla Webster,<br><br>    Plaintiffs/Relators,<br><br>v.<br><br>Laboratory Corporation of America Holdings,<br><br>    Defendant. | C/A No. 9:14-3699-RMG<br><br>**ORDER** |

Before the Court is Plaintiffs-Relators' motion to compel discovery from Defendant Laboratory Corporation of America Holdings ("LabCorp"). (Dkt. No. 126.) For the reasons set forth below, the motion is granted.

**I.    Background**

This is a *qui tam* action in which the United States of America declined to intervene. Plaintiffs-Relators allege that LabCorp violated the False Claims Act and Anti-Kickback Statute by submitting false claims to Government healthcare programs relating to blood draw services for tests referred by physicians to third-parties Health Diagnostic Laboratory and Singulex, Inc., which LabCorp knew were paying illegal inducements to the referring physicians. (Dkt. No. 50.) The Court granted in part and denied in part LabCorp's partial motion to dismiss the fourth amended complaint. The kickback related claims were not a target of that motion. The Court dismissed the claims alleging medically unnecessary tests, the claim alleging reverse false claims liability, and claims brought under California and Illinois law. The Court did not dismiss the conspiracy claim. (Dkt. No. 72.)

## II.     Legal Standard

Parties to a civil litigation may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense" including information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Courts broadly construe rules enabling discovery, but certain limits may be imposed. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The district court "must limit the frequency or extent of discovery . . . if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Courts have broad discretion in [their] resolution of discovery problems arising in cases before [them]." (alternations in original and internal quotation marks omitted)).

If a party declines to answer a request for production, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The district court will treat an "evasive or incomplete" discovery response as "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). A document is under a party's possession, custody or control if the party has the "practical ability" or "legal right" to obtain the documents. *Wade v. Chase Bank USA, N.A.*, No. 2:12-cv-3565, 2013 WL 12154986, at *2 (D.S.C., Nov. 7 2013) (surveying cases). The district court may, in its discretion, "accept, at face value, a party's representation that it has fully produced all materials that are discoverable." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000).

**III.     Discussion**

The crux of the parties' dispute is whether LabCorp may point Plaintiffs-Relators to documents they have already seen—documents that LabCorp produced to the Department of Justice (the "DOJ Production") in response to its civil investigation demands ("CID Demands") propounded while investigating this matter—as responsive to Plaintiffs-Relators' own requests for production ("RFP").  LabCorp objected to Plaintiffs-Relators' first set of RFPs as "duplicative" of the CID Demands because they are "substantially identical" and, on that basis, concluded that the DOJ Production was already "fully responsive" to the RFPs and need not be reproduced.[1]

Plaintiffs-Relators' instant request is three-fold.  First, they move to compel supplemental document production, arguing that even if reproduction of the DOJ Production were unduly

---

[1] Plaintiffs-Relators' Requests for Production of Documents, Request No. 1, demanded:

"A copy of all documents produced by LabCorp in response to Civil Investigation Demands issued by the U.S. Department of Justice (the "government") in connection with its investigation of LabCorp, HDL, or Singulex related to this matter."

LabCorp's first general objection stated:

". . . LabCorp objects to any large scale requests from Relators for electronically stored information or other documents.  LabCorp has previously reviewed hundreds of thousands of documents and made over 95 productions to the U.S. Department of Justice ("government") prior to the government's declination to intervene, consisting of over 46,000 pages of documents related to the allegations in Relators' operative complaint.  LabCorp made the 85 productions in response to a subpoena *duces tecum* from the Office of Inspector General of the Department of Health and Human Services and a Civil Investigation Demand ("CID") from the United States Attorney's Office for the District of South Carolina.  Relators' Requests are substantially identical—both in form and content—to the government's document requests in the CID. LabCorp objects to Relators' duplicative requests."

LabCorp's Response to RFP No. 1 stated:

". . . LabCorp will produce to Relators responsive 460,000 pages of non-privileged documents in its possession ("DOJ Productions") that LabCorp produced to the Department of Justice, which is the real party in interest, during its investigation and before it declined to intervene in this matter. . . .  LabCorp states that, because the Requests are duplicative of the CID, the DOJ Productions are fully responsive to the Requests."

(Dkt. No. 126-6 at 3-4, 6-7.)

-3-

burdensome, the CID Demands were in any event narrower than their RFPs, in part because the Government and LabCorp negotiated during the investigation to tailor them. Relatedly, Plaintiffs-Relators argue that LabCorp's written responses to their RFPs do not comply with Rule 34 such that they cannot discern which documents are already produced or deemed non- responsive to each RFP.[2] Rule 34 provides, "[f]or each item or category [of document demanded], the response must either state that inspection will be permitted as requested or state with specificity the grounds for objection to the request, including the reasons." Fed. R. Civ. P. 32(b)(2)(B). It also requires that an "objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 32(b)(2)(C). Last, the parties dispute whether LabCorp is complying with their electronically stored information (ESI) protocol.

The Court has reviewed Plaintiffs-Relators' RFPs, LabCorp's responses and objections to them, and a sampling the CID Demands. The CID Demands made available to the Court are materially different in scope from the RFPs.[3] It follows that LabCorp's responses to the RFPs cannot be predicated on a reference to its prior DOJ Production in response to the CID Demands. Because LabCorp's objects that the DOJ Production was already "fully responsive" the RFPs, it is unclear to which RFPs LabCorp believes it has already produced documents and to which it is withholding documents under a specific objection. LabCorp is, therefore, directed to supplement its responses to the First Requests for Production of Documents to ensure that each response is

---

[2] "[ ] Plaintiffs cannot assess whether LabCorp has adequately responded to their RFPs when LabCorp refuses to provide any information specifying which RFPs it believes it has responded to, and which RFPs it has declined to respond to based on a claim of privilege or other objections." (Dkt. No. 126 at 15.)

[3] Plaintiffs-Relators provide a sampling under seal of comparisons of the CID Demands to the RFPs. For example, one CID Demand sought documents "that identify" specific information in certain "reports," whereas the RFP seeks "all documents . . . regarding reports." (Dkt. No. 127 at 17.)

Rule 34 compliant. LabCorp is further directed to supplement its document production to reflect the amended responses.

The Court has also reviewed the parties' ESI protocol, which provides that each party "may also propound up to 5 written discovery requests and take 1 deposition per producing party to identify the proper custodians" of email productions. (Dkt. No. 97 at 24.) Plaintiffs-Relators argue that in response to their five interrogatories (Dkt. No. 126-16), they received a bad faith response.[4] LabCorp contends that the "ESI Protocol requires that each Party identify 'the most relevant listed e-mail custodians in view of the pleaded claims and defenses,'" and "does *not* require a party to go beyond those 'most relevant' custodians to identify every individual who may have 'had contact with' a document." (Dkt. No. 149 at 24.) It is unclear how LabCorp can simultaneously argue that the ESI protocol requires only the "most relevant" custodians and produce a list of 20,000 employees. In any event, LabCorp misconstrues the parties' agreement. The ESI protocol provides that "E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, a specific identification by each party of the most relevant listed e-mail custodians in view of the pleaded claims and defenses, and preliminary information relevant to damages." (Dkt. No. 97 at 24.) Reading the parties' agreement in full, they determined that after each party exchanged initial disclosures and specific identifications of the most relevant custodians, then each party could propound five interrogatories or conduct one deposition to identify additional email custodians. Reponses to any such interrogatories must be compliant with Rule 33. LabCorp is, therefore, directed to supplement its prior responses to Plaintiffs-Relators' demands propounded under the ESI protocol.

---

[4] LabCorp produced a list of 20,000 LabCorp employees and pointed Plaintiffs-Relators to its prior document productions and initial disclosures, including a "non-exhaustive list" of documents from the DOJ Production. (Dkt. Nos. 126-3, 126-17, 126-20.)

Last, the parties dispute which date should be their privilege log cut-off. Plaintiffs-Relators initially proposed April 4, 2018, representing when this action was unsealed (Dkt. No. 31) upon the Government's declination to intervene. LabCorp countered with February 6, 2013, representing when Plaintiffs-Relators first filed the action. (Dkt. No. 126-22.) Plaintiffs-Relators here seek to use January 1, 2015 as the cut-off date, representing a compromise and reflecting their concern that LabCorp's communications relating to its 2013 and 2014 submission of requests for Special Fraud Alerts are not privileged. LabCorp argues the dispute is "moot because its privilege logs "include entries through the end of 2014." (Dkt. No. 149 at 25.) LabCorp does not specify that it logged all such entries. The Court finds that January 1, 2015 represents a reasonable cut-off to enable the parties to continue to engage in robust but efficient discovery. The parties are, therefore, directed that they do not have to include in their privilege logs privileged communications after January 1, 2015 between counsel and their clients or counsel and the Government. LabCorp is directed to amend its privilege logs, after review of which Plaintiffs-Relators may bring a specific motion to compel for the Court to conduct an *in camera* review of any contested documents for privilege.

## IV.     Conclusion

For the foregoing reasons, the Plaintiffs-Relators' motion to compel (Dkt. No. 126) is **GRANTED**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

August 3, 2020
Charleston, South Carolina