**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA et al., EX REL. SCARLETT LUTZ and KAYLA WEBSTER, | |
| Plaintiffs/Relators, | |
| v. | C/A No. 9:14-cv-3699-RMG |
| LABORATORY CORPORATION OF AMERICA HOLDINGS, | |
| Defendant. | |

**JOINT MOTION TO AMEND SCHEDULING ORDER AS DIRECTED**
**BY THE TRIAL COURT ON JANUARY 8, 2021**

Pursuant to the Court's January 8, 2021 Order (ECF No. 241), Plaintiffs/Relators and Defendant LabCorp respectfully submit proposed amendments to the Court's current Scheduling Order (ECF No. 223). The Parties have met, conferred, and corresponded on a modified proposed scheduling order and come to agreement on most deadlines. The Parties request the Court resolve two limited disputes concerning (i) the fact discovery deadline and (ii) the dispositive and *Daubert* motion briefing schedule.

Consistent with the Court's Order and the January 8, 2021 status conference, the Parties propose the following schedule, with limited areas of dispute highlighted, also set forth in the attached proposed amended scheduling orders (Exhibit 1 (Plaintiffs' Proposal); Exhibit 2 (LabCorp's Proposal)):

| | Current Deadline | Plaintiffs' Proposal | LabCorp's Proposal |
|---|---|---|---|
| **Plaintiffs Expert Disclosures** | 1/11/2021 | 1/25/2021 | Same |
| **Defendant Expert Disclosures** | 1/29/2021 | 2/22/2021 | Same |
| **Fact Discovery Deadline** | 1/29/2021 | No Change | 2/26/2021 |
| **Expert Discovery Deadline** | 2/26/2021 | 3/5/2021 | Same |
| **Dispositive and *Daubert* Motions** | 3/12/2021 | No Change | No Change |
| **Dispositive and *Daubert* Motion Oppositions** | 3/26/2021 | 4/2/2021 | No Change |
| **Dispositive Motion Reply Briefs** | 4/2/2021 | 4/9/2021 | No Change |
| **Deadline to Participate in Mediation** | 4/5/2021 | No Change – Mediation is scheduled all day on 3/18/2021 | No Change – Mediation is scheduled all day on 3/18/2021 |
| **Rule 26(a)(3) Pretrial Disclosures** | 4/8/2021 | No Change | No Change |
| **Motions in Limine** | 4/12/2021 | No Change | No Change |
| **Pretrial Briefs** | 4/19/2021 | No Change | No Change |
| **Trial** | 5/3/2021 | No Change | No Change |

## I.    Agreed Proposals

The Parties agree to a limited, modified schedule on expert discovery. During the January 8, 2021 status conference, the Court granted Plaintiffs' request to extend Plaintiffs' deadline for their damages expert report by two weeks to January 25, 2021. Plaintiffs served their other three expert reports on November 16, 2020. The Court also ruled that LabCorp may have a two-week extension on its expert disclosures. The Parties propose an additional 10-day extension setting the deadline for LabCorp's expert disclosures to February 22, 2021.

The Parties have scheduled a full day, remote videoconference mediation for March 18, 2021 before Nancy F. Lesser, Esquire (Pax ADR LLC, 2101 L Street, N.W. Suite 800, Washington

DC 20037). After that date, Ms. Lesser is not available until the week of April 5, 2021. Therefore, the Parties intend to keep their scheduled mediation date.

## II.     Fact Discovery

### A.     Plaintiffs' Position

There is no justification for granting the 28-day fact discovery extension requested by LabCorp. The Court's ruling granting Plaintiffs a two-week extension for their expert damages report in no way impacts fact discovery. And LabCorp has already been granted a 42-day extension of the fact discovery deadline over Plaintiffs' objection. (*See* ECF No. 222.) The time to bring an end to fact discovery has occurred.

LabCorp seeks to further extend the fact discovery deadline to enable it to depose third-party physicians customers. LabCorp first noticed six of these depositions on December 1, 2020—less than three weeks before the original December 18, 2020 fact discovery deadline. Since then, LabCorp has cherry picked for deposition eight additional third-party doctors--LabCorp's long-known own customers, who received kickbacks. LabCorp has been able to schedule two of these doctor-customer depositions, and it may still be able to schedule and take additional ones before the current January 29, 2021 fact discovery deadline. Delaying the close of fact discovery by another month, to take additional third-party depositions, is unjustified.

Delaying the close of fact discovery for another month, to let LabCorp search for a few more third-party doctor deponents, is unjustified for a number of reasons. First, the testimony is irrelevant, based on LabCorp's blatant misstatement of what Relators must prove to the jury. LabCorp is attempting a last-minute misdirection to shift the focus on the wrong state of mind. Relators will address this in much more detail at trial, but the focus of this case is on LabCorp's state of mind, not the doctors. LabCorp's reason for seeking these depositions has nothing to do with LabCorp's state of mind. Moreover, self-serving testimony by a handful of doctors—out of

thousands—that they could or would have found someone other than LabCorp to draw the blood for the tainted HDL and Singulex tests does not change the fact that LabCorp knowingly allowed its phlebotomists draw this blood, knowing that its conduct facilitated payment of kickbacks to the physicians and submission of false claims to Government healthcare programs.

Second, the testimony LabCorp hopes to elicit from a handful of its doctors is belied by substantial evidence already in the record. Many doctors who referred large volumes of tests to HDL and Singulex were entirely reliant on LabCorp phlebotomy services for these blood draws. Many doctors threatened to terminate their relationship with LabCorp if LabCorp refused to keep drawing blood for HDL and Singulex tests. Moreover, a preponderance of evidence in this case— including the testimony of Dr. Morrison earlier this month—confirmed the "quid pro quo" that LabCorp set in place. LabCorp's doctor-customers made clear to LabCorp that a request for the LabCorp phlebotomist to draw for an HDL test would always include a referral to LabCorp.

Third, these handful of doctor depositions represent a miniscule and highly unscientific sample of the conduct in this case. Thousands of doctors received kickbacks over the relevant time period as a result of LabCorp's phlebotomists drawing blood for HDL and Singulex tests. LabCorp has so far scheduled deposition for just two (the second is to occur on January 13). Such a small sample, and one hand-selected by LabCorp (rather than chosen at random), has very little probative value.

Fourth, LabCorp is itself to blame for its delay in noticing these depositions. LabCorp has known about these doctors for years – they are, after all, LabCorp's own customers. Yet LabCorp waited until December of last year, shortly before the holidays and with just weeks left in the discovery period, to even begin noticing these depositions. The Court should not countenance this kind of delay with further extensions of the fact discovery deadline.

Pursuant to the Court's ruling during the January 8, 2021 status conference, Plaintiffs are working with LabCorp to schedule the three-hour depositions of three LabCorp phlebotomist employees. These phlebotomist employees were first added to LabCorp's initial disclosures on December 10 and 30, 2020. Plaintiffs promptly served deposition notices for these individuals on December 30 and 31, 2020. As a result, LabCorp has had sufficient time to make available its employees for their depositions within the current fact discovery deadline. In an effort to compromise, if needed, Plaintiffs would agree to extend the fact discovery deadline solely for these phlebotomists' depositions. But Plaintiffs oppose an open-ended extension of fact discovery.

LabCorp also claims an extension on the fact discovery deadline is necessary in the event that it needs to move to compel on Plaintiffs' responses to LabCorp's Interrogatories Nos. 7 and 8. These Interrogatories seek the claim number, date of service, and amount paid, for each claim in Plaintiffs' damages calculation. Plaintiffs have explained repeatedly that LabCorp will receive this information with the Plaintiffs' damages expert report on January 25, 2021. At that point, if LabCorp believes Plaintiffs' response to Interrogatories Nos. 7 and 8 are deficient, LabCorp may exercise its right to move to compel. It is not necessary to extend the fact discovery deadline for LabCorp to preserve this right with the Court.  To be clear, the only reason Plaintiffs have not yet been able to provide these discovery responses to identify the false claims in this case is because LabCorp has been providing conflicting information about which of its phlebotomists were doing blood draws for HDL and Singulex tests.

### B.    LabCorp's Position

LabCorp respectfully asks for a short extension to the fact discovery deadline to finish a few outstanding discovery issues.  Relators' theory of the case is that LabCorp in-office phlebotomists proximately caused the submission of HDL's and Singulex's claims for payment to Medicare by performing courtesy draws.  Yet the physicians who allegedly ordered the HDL and

Singulex tests have testified that in many instances the specimens for the tests **were not drawn** by LabCorp phlebotomists. Some hired their own phlebotomists to perform draws, or used their nurses at various times. And, even more importantly, **the physicians have uniformly confirmed** that LabCorp's provision of an IOP that sometimes performed courtesy draws had **no bearing whatsoever** on whether those physicians ordered HDL or Singulex tests.

Dr. Russell Morrison, for example, recently testified:

> 9  **Q.     Okay. And the fact of who was going to**
> 10  **draw the blood for a particular test, did that have**
> 11  **any impact on whether you ordered that test**
> 12  **whatsoever?**
> 13  **A.     No.**

He likewise testified that he "would . . . still have ordered the tests that were performed by HDL between 2010 and 2014" even if his own employee drew every specimen. Dr. Russell Morrison Rough Tr. 25:3–17. In other words, "the fact that the LabCorp phlebotomist may have performed a courtesy draw at some point" did not "have any impact whatsoever on [Dr. Morrison's] judgment as to whether to order a test that would be sent to HDL" or to LabCorp. *Id.* at 37:4–15.[1] Other

---

[1] When asked whether he ever asked his own employed phlebotomist not to perform courtesy draws, Dr. Morrison also testified:

21  A.     No. I would never have them stuck twice.
22  Q.     Okay. And why would you never want the
23  patient to be stuck twice?
24  A.     I mean, it's undue harm to a patient and
25  there's -- it's unnecessary. The way the blood is
34:2  drawn, I mean ,it's one needle, one hub, and you just
3  interchange the tubes.
4  Q.     And so in your medical judgment, it is --
5  it's appropriate to try to reduce the number of times
6  that a patient in this circumstance is stuck with
7  needles; right?
8  A.     Yes.
9  Q.     And that can reduce the risk of a
10  patient's infection; right?
11  A.     Absolutely.
12  Q.     In your experience, do -- is the rate of
13  patient compliance with getting drawn for testing
14  higher when they are able to be drawn by a member of
15  your staff than if they are asked to go to a patient

physicians have said the same thing.  *See, e.g.*, Dr. Rajesh Kedar Tr. 158:22–159:5 ("Q. So is it accurate to say that you would have ordered tests from HDL regardless of who drew the blood?  A. Yes.  Is it accurate to say that you would have ordered tests from Singulex regardless of who drew the blood?  A. Yes.")  Yet another just submitted a declaration (which LabCorp is providing to Relators) likewise stating  that "[a] LabCorp IOP was not necessary for the drawing of blood . . . and the presence or services of that IOP was not a factor in [his] decisions to order tests from LabCorp or any other laboratory."  Dr. Damon Daniels Decl. ¶ 12; *see id.* ¶ 17 ("I would have ordered the same tests from the same competitor labs even if LabCorp IOPs were not available or did not perform courtesy draws for those tests.").  This testimony—from the witnesses who have actual first-hand knowledge—directly disproves Relators' assertion that LabCorp "caused" the submission of HDL and Singulex's claims. Yet, as discussed with the Court at the recent status conference, Relators have chosen to ignore the testimony of the physicians who actually were

---

16  service center somewhere else?
17          MR. ROSS:  Objection to form.
18  A.        It's significantly higher.  We have some
19  patients whose insurance makes it very specific on
20  where they go.
21          We have -- Mercy Hospital is our local
22  hospital.  It used to be called Saint E's.  If you
23  take care of a Mercy employee, they have to go to a
24  Mercy draw site.
25          The rate of them going to get their blood
35:2  draw in a timely manner is, I'd say, less than
3  25 percent.
4          The lab doesn't communicate the results
5  very well.  We have to search and wait, and we don't
6  know when they went to get it.  So oftentimes, you
7  know, we'll have labs outstanding.  It's difficult to
8  keep track of those patients.
9          So it's much, much safer, much better, and
10  you get your results a lot quicker if you do an
11  in-house draw.
12  Q.        So if the draws are done at your office,
13  it's much safer and much better for the patients than
14  if you force them to go to another place for the
15  draw?
16  A.        Yes.

involved in the referrals of testing, apparently choosing to argue that when multiple physicians testify that LabCorp phlebotomists did not cause HDL's claims for payment, that should have no bearing on Relators' attempt to hold LabCorp liable for "hundreds of millions of dollars"[2] for those claims under the FCA, and then that, because of that, the Court should not allow LabCorp any additional depositions.  Respectfully, the Court should reject both of those arguments.

A short extension will allow LabCorp to depose a few additional doctors whose testimony likewise will go to the very heart of this case.  LabCorp has diligently worked to identify physicians, but has been hindered on several fronts.  First, it was not able to access the relevant claims data from the government until October 2020 due to problems on the government's end.  It then had to analyze the claims data to try to identify physicians who might have relevant information.  And given the burdens associated with treating COVID-19 patients and otherwise dealing with the pandemic, many subpoenaed physicians have not been in a position to immediately cooperate.

Furthermore, LabCorp still does not know whether certain physicians come within the scope of Relators' case—that is, whether they ordered tests that led to claims for which Relators allege LabCorp is liable—because Relators have still not identified *any* false claims for which they allege LabCorp is liable.  Relators have represented that **they will provide this information for the first time on January 25, 2021**.  January 25, 2021 will be almost 11 months after LabCorp requested this information from Relators and just 4 days before the end of fact discovery.  Particularly given the additional discovery Relators have sought—including last-minute depositions of LabCorp phlebotomists, depositions of LabCorp's outside counsel, and others—a short extension to allow LabCorp to depose additional third-party physicians who can

---

[2] Dkt. 126 at 24.

provide firsthand knowledge about the truth or falsity or Relators' allegations is in the best interest of the parties and the Court in resolving this case.

## III.     Dispositive Motion and *Daubert* Motion Briefing Schedule

### A.     Plaintiffs' Position

Due to the complexity of the case and volume of materials, Plaintiffs respectfully request a one-week extension of the two-week default deadline for filing oppositions to dispositive motions and *Daubert* motions. *See* Local Rule 7.06.  Plaintiffs would not oppose a corresponding one-week extension of the default deadlines for filing reply briefs in support of dispositive motions. *See* Local Rule 7.07.

Given the volume of evidence and complexity of issues in this case, a one-week extension is reasonable and beneficial to both Parties. Even with advance planning, oppositions to motions for summary judgment (including the counterstatement of facts) and *Daubert* motions will require extensive time.

Plaintiffs understand that LabCorp would not oppose extending these briefing deadlines by one week, if the trial date were also extended from May 3. Plaintiffs would not oppose that slight extension of the trial date by one to two weeks, in order to accommodate the requested one-week extension to the briefing deadlines for oppositions to dispositive motions and *Daubert* motions. Plaintiffs agree with LabCorp that a brief extension of the trial can alleviate the valid concern. Plaintiffs oppose LabCorp's proposal to push the trial date to July 6.

### B.     LabCorp's Position

LabCorp asks the Court to keep the current summary-judgment briefing schedule.  This is a complex case where over 30 depositions have been taken and over 5 million pages of documents exchanged.  If necessary, trial is estimated to take several months.  The Court's resolution of

LabCorp's anticipated summary judgment motion will be absolutely critical to potentially resolving, or at least substantially narrowing, the case.

The current schedule is already tight: briefing will be complete on April 2, 2021, just one month before the current trial date of May 3, 2021. Relators' proposed briefing schedule would further shrink that already compressed timeline to provide only three weeks between briefing and trial. Given the complexity and the number of depositions and documents involved, such little time between briefing and trial is not in anyone's best interest. Moreover, Relators' proposed schedule allows them an extra week for their opposition brief, but does not provide LabCorp with a similar extension for its reply brief. (While Relators have offered an additional week for reply briefs, that would push briefing all the way to April 16, just two weeks before trial.) LabCorp is not totally opposed to allowing Relators more time for their brief in opposition to summary judgment, but, under the Court's current Order and the current trial date, LabCorp respectfully submits that the briefing schedule must remain the same.

It is clear from the parties' meet and confer conference, however, that both would agree to an extension of the trial date in order to provide additional time for summary judgment briefing. Thus, if the Court were so inclined, LabCorp proposes that after dispositive motions are filed on March 12, oppositions could be filed on April 12, replies filed on April 26, and then trial commence on July 6.

## IV.    Conclusion

For these reasons, the Parties respectfully request the Court (i) grant the Parties' joint proposed motion to amend the Scheduling Order; and (ii) resolve the two limited disputes concerning the dispositive and *Daubert* motion briefing schedule and the fact discovery deadline.

Dated: January 12, 2021                    Respectfully submitted,

/s/ Stacie C. Knight
Stacie C. Knight
(S.C. Bar No. 77968 & D.C. No. 10411)
**WINSTON & STRAWN LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
(704) 350-7700
(704) 350-7800 (fax)
sknight@winston.com

Thomas M. Melsheimer (Admitted *Pro Hac Vice*)
Chad B. Walker (Admitted *Pro Hac Vice*)
John Michael Gaddis (Admitted *Pro Hac Vice*)
Katrina G. Eash (Admitted *Pro Hac Vice*)
Chase J. Cooper (Admitted *Pro Hac Vice*)
Kate Marcom (Admitted *Pro Hac Vice*)
Rachel Koehn (Admitted *Pro Hac Vice*)
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
(214) 453-6500
(214) 453-6400 (fax)
tmelsheimer@winston.com
cbwalker@winston.com
mgaddis@winston.com
keash@winston.com
ccooper@winston.com
kmarcom@winston.com
rkoehn@winston.com

Marc S. Raspanti (Admitted *Pro Hac Vice*)
Pamela Coyle Brecht (Admitted *Pro Hac Vice*)
Michael A. Morse (Admitted *Pro Hac Vice*)
**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200
Facsimile: (215) 754-5191
MSR@Pietragallo.com
PCB@Pietragallo.com
MAM@Pietragallo.com

11

Stephen Shackelford, Jr. (Admitted *Pro Hac Vice*)
Steven M. Shepard (Admitted *Pro Hac Vice*)
Jonathan Ross (Admitted *Pro Hac Vice*)
Amy B. Gregory (Admitted *Pro Hac Vice*)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com
jross@susmangodfrey.com
agregory@susmangodfrey.com

*Attorneys for Plaintiffs/Relators*

*/s/  James Lynn Werner*
James Lynn Werner
Fed. Bar. No. 1079
John G. Tamasitis
Fed. Bar No. 11995
PARKER POE
1221 Main Street, Suite 1100
Columbia, South Carolina 29201
Phone: (803) 253-8913
Fax:    (803) 255-8017
Email:  jimwerner@parkerpoe.com
            johntamasitis@parkerpoe.com

Stephen G. Sozio (*admitted pro hac vice*)
Ohio Bar No. 0032405
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Phone: (216) 586-3939
Fax:    (216) 579-0212
Email:  sgsozio@jonesday.com

Heather M. O'Shea (*admitted pro hac vice*)
Illinois Bar No. 6287953
JONES DAY
77 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 782-3939
Fax:    (312) 782-8585
Email:  hoshea@jonesday.com

B. Kurt Copper (*admitted pro hac vice*)
Texas Bar No. 24117918
Jonathan D. Guynn (*admitted pro hac vice*)
California Bar No. 307285
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
Phone:  (214) 220-3939
Fax:     (214) 969-5100
Email:  bkcopper@jonesday.com
       jguynn@jonesday.com

Benjamin B. Menker (*admitted pro hac vice*)
Ohio Bar No. 0091995
M. Ryan Harmanis (*admitted pro hac vice*)
Ohio Bar No. 0093642
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, Ohio 43215
Phone:  (614) 469-3939
Fax:     (614) 461-4198
Email:  bmenker@jonesday.com
       rharmanis@jonesdayc.com

*Counsel for Defendant Laboratory*
*Corporation of America Holdings*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically and will be served on all counsel of record via CM/ECF on January 12, 2021.

*/s/ Stacie C. Knight*
Stacie C. Knight