# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| United States of America, *et al.*, *ex rel.* Scarlett Lutz and Kayla Webster, ) ) ) Plaintiffs/Relators, ) ) v. ) ) Laboratory Corporation of America Holdings, ) ) ) Defendant. ) ) | C/A No. 9:14-3699-RMG **ORDER** |

Before the Court is LabCorp's motion to reconsider its order limiting the number of depositions of physicians who were identified in Plaintiffs' expert report as "unlawfully induced" by the conduct of Defendant. (Dkt. No. 303). Plaintiffs have responded in opposition. (Dkt. No. 305.)

A restatement of the present circumstances of discovery in this case is necessary. Discovery in this False Claims Case commenced in October 2019 and since then the Court has issued six discovery orders setting reasonable limits and deadlines on discovery. (Dkt. Nos. 85, 106, 158, 223, 244, 301). Plaintiffs delivered to Defendant on January 26, 2021 their damages expert report that identified 440 physicians who had allegedly been "improperly induced" by Defendant. (Dkt. No. 293 at 12, 14). This expert report was delayed by difficulties the parties had in obtaining claims information from the federal government.

Shortly after receiving this expert report, Defendant's counsel began reaching out to some of these identified physicians regarding the claim of improper inducement and certain declarations were signed by a limited number of physicians that were intended to be submitted in support of an anticipated motion for summary judgment. Meanwhile, Defendant began the

-1-

process of notifying 80 physicians for depositions, arguing this was "a really healthy representative sample of the 440 identified in the expert report. (*Id*. at 14).

The Defendant's actions in attempting to set up depositions of 80 physicians across the country confronted some practical obstacles. First, fact discovery ends on February 26, 2021, making the scheduling and conducting of this number of depositions in a matter of weeks challenging at best. Second, it is highly likely that many of these physicians will seek protective orders or motions to quash, setting off numerous third-party discovery battles in multiple districts across the country. Third, a number of physicians noticed for depositions on matters regarding alleged submission of false claims to the United States Government may view these issues as raising potential criminal exposure, making it likely that many will assert the Fifth Amendment if actually deposed.

It was immediately apparent to the Court when this issue was raised in the February 12, 2021 status conference that this situation was about to become a run-away train just as discovery was to end and dispositive motions were to be filed. Further, it appeared to the Court that the taking of 80 depositions was unnecessary, at least initially, to obtain a sample of this group of 440 allegedly "improperly induced" physicians.

Exercising its authority to manage the scope of discovery and the need for proportionality as mandated by the 2015 amendments to Federal Rule of Civil Procedure 26(b)(1), the Court limited the number of physician depositions to 20 and extended fact discovery on these depositions alone to March 10, 2021. (Dkt. No. 301 at 3).[1] As the Court explained in the February 12, 2021 status conference, if the result of the taking of the 20 depositions "is

---

[1] The Committee Notes to the 2015 amendment to Rule 26(b)(1) stated that the amendment reflected "the need for close and continuing judicial involvement in cases that do not yield to the ideal of effective party management. . . [T]here will be important occasions for judicial management, both when the parties are legitimately unable to resolve important differences and when the parties fall short of effective cooperative management on their own."

somehow unfair to one party or another, I'm open to hearing that out, but I'm just trying to get control over not producing 80 depositions. I don't think that is necessary." (Dkt. No. 293 at 33).

Defendant has now moved the Court to reconsider its order limiting the depositions. (Dkt. No. 303). Much of Defendant's concern is that Plaintiffs will attempt to amend their expert report whenever any allegedly improperly induced physician offers evidence challenging the expert's inclusion of the physician in the damages calculation. (*Id*. at 3-4). The Court's scheduling order set a deadline for the Plaintiffs' expert report, and no amendment of that expert report will be allowed unless an extension is granted by the Court upon a finding of good cause. The Court does not intend to set off a tit-for-tat discovery process where the Plaintiffs' expert modifies his report in an endless process of Whac-A-Mole.

Defendant also seeks a ruling from the Court that Plaintiffs cannot use evidence beyond these 20 depositions to support their claim that the identified list of physicians was improperly induced. (*Id*. at 4). This issue is plainly not ripe at this time, and the Court therefore declines to address this issue at this time. Additionally, Defendant contends that Plaintiffs' counsel is attempting to "game" the Court's limit to 20 depositions to its advantage. (*Id*. at 4-6). Again, this issue is not ripe, and the Court declines to address the issue at this time.

Based on the foregoing, Defendant's motion to reconsider (Dkt. No. 303) is **DENIED**.

**AND IT IS SO ORDERED.**

                                            s/ Richard Mark Gergel
                                            Richard Mark Gergel
                                            United States District Judge

February 24, 2021
Charleston, South Carolina